Genevieve Eveus NOWLIN, Appellant,

v.

LaRue TROTTMAN, Appellee.

No. 7060.

Court of Civil Appeals of Texas.

Amarillo.

May 22, 1961.

Rehearing Denied June 26, 1961.

Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, Roy Sansing, Higgins, for appellant.

Lemon & Close, Perryton, for appellee.

NORTHCUTT, Justice.

This is a will contest. Mrs. Minerva Trottman, 78 years of age and a resident of Lipscomb County, Texas, died July 9, 1958 of a cerebral hemorrhage. She entered the hospital five days before her death. Her last will was executed on May 7, 1956 and witnessed by Carl Goettsche and Clara Sansing. She left all of her property, consisting chiefly of 161 acres of land, to her daughter, Genevieve Eveus Nowlin. She was a widow and had only two children, Genevieve Eveus Nowlin and LaRue Trottman.

The will was admitted to probate in the County Court of Lipscomb County, Texas but a contest was filed by her son, LaRue Trottman, and this contest is from the judgment of the District Court of Lipscomb County. The trial in the District Court was before a jury and only one issue was submitted to the jury: whether, at the time Mrs. Minerva Trottman executed the purported will on May 7, 1956, she had testamentary capacity as that term had been defined in the court's charge. The answer of the jury was: "She did not have testamentary capacity." Based on the jury verdict, judgment was entered setting aside the order probating the will and denying Genevieve Eveus Nowlin's application for probate of the instrument. From the judgment of the District Court appellant, Genevieve Eveus Nowlin, perfected this appeal. Hereafter Mrs. Nowlin will be referred to as appellant and LaRue Trottman as appellee.

Appellant by her first and second points of error relies for reversal upon errors of the court in overruling her motion for directed verdict, objections to the court's charge, motion non obstante veredicto, and motion for new trial in that there was no evidence before the jury to support a finding of lack of testamentary capacity, and in the alternative there was so little evidence of lack of testamentary capacity that the finding of no testamentary capacity was so against the great preponderance of the evidence to be manifestly unjust and

clearly wrong and in such obvious conflict with the preponderance of the evidence that it must be the result of improper motive. Before discussing the effect of these points we will endeavor to give the substance of the evidence introduced.

Before any testimony was introduced, the appellee, for the purpose of having the privilege to open and close in adducing his testimony and in the argument, admitted the will was properly executed and signed by Mrs. Trottman and should be admitted to probate, unless he would show she did not have testamentary capacity to make the will on May 7, 1956. Appellant contended she had the right to first offer the will in evidence and prove up the proper execution and so forth, but the court, upon the assurance of the appellee, agreed that was all done and proceeded to permit appellee to proceed with evidence to show the deceased did not have testamentary capacity, and gave appellee the right to open and close as to the introduction of evidence and as to the argument to the jury. However, the appellant later presented the execution of the will and necessary steps to have the will probated.

The first witness offered by appellee was Fay Schoenhals, an employee in the District and County Clerk's Office. She testified that sometime during the fall of 1956 Mrs. Trottman brought a lock box to the clerk's office and asked permission to place it in the vault in the clerk's office, and when there was a change as to the clerk, she would come in and ask if it was agreeable to leave the box there. After the death of Mrs. Trottman the lock box was opened and there was a will of Mrs. Trottman dated April 22, 1953, in which she divided her property between this appellant and appellee and the appellee introduced the 1953 will in evidence.

The second witness, Ivan Case, testified he had known Mrs. Trottman since 1914 and that she was a little queer but a very nice lady, and explained that by queer she was a little harder to get acquainted with

than some people. The third witness, Emerson Martin, testified he had known Mrs. Trottman since 1928 and that he knew that she and LaRue didn't get along and often she was mad at him, and when she was mad she was really mad. Of course, she wasn't rational when she was mad but if she wasn't mad she was all right. There is not even a suggestion she was mad when she wrote the will in question. On cross-examination Mr. Martin testified he didn't know anything about whether she was mad when she executed the will on May 7, 1956. He further testified Mrs. Trottman knew she had two children, LaRue and Genevieve, and she knew she had this property whether she was mad or not and knew the extent of her property and knew her children at all times. He also testified Mrs. Trottman and her daughter came to his house and stayed all night and told him about LaRue throwing a pitchfork at his mother. Mrs. Trottman told Martin about giving LaRue a lease on the farm and that it was a cash rent deal. She made this lease so she would know what she was going to receive, and he thought that was very sensible. He thought her mind seemed all right, except when she was mad at somebody.

The fourth witness offered by the appellee was Mrs. Nowlin by which appellee was seeking to show her feelings against LaRue, and that she used undue influence over Mrs. Trottman to cause her to make the will as she did; but after the introduction of her testimony, appellee announced he would withdraw his contention as to undue influence and rely solely upon the lack of testamentary capacity.

After the introduction of the evidence of the above mentioned witnesses, the appellee rested his case, and at that point, the appellant made her motion for an instructed verdict because appellee had offered no evidence to support a finding of the jury that the testator, Mrs. Trottman, lacked testamentary capacity at the time of the execution of the will, and also as to there being insufficient evidence. The court over-

ruled the motion. We are of the opinion the appellant was entitled to judgment at that time and the court erred in not granting the motion.

After the court had overruled appellant's request for instructed verdict, although the appellee had stipulated, for the purpose of having the right to open and close the evidence and argue to the jury, that the will was properly executed and signed by Mrs. Trottman and should be admitted to probate unless the appellee would show that she did not have testamentary capacity to make the will on May 7, 1956, the appellant proceeded to introduce the will and show it was properly witnessed. The appellant then introduced the evidence of 13 witnesses substantiating that Mrs. Trottman had testamentary capacity to make the will in question. We will not attempt to give the testimony of these witnesses offered by the appellant but think it all is to the effect that she did have testamentary capacity. After offering this evidence the appellant rested her case.

In rebuttal the testimony of appellee and his wife was introduced. Lucille Trottman, wife of the appellee, stated she had had one year of psychology and that Mrs. Trottman had a split personality. She based her opinion, that Mrs. Trottman did not have testamentary capacity, on the fact that she was jealous of her because she had married LaRue and because Mrs. Trottman dyed her hair and bought high-heeled shoes and talked about people and worried because she was afraid men would fool with her granddaughter, and screamed one time when riding in an automobile but had no reason to do so; but the testimony of the witness that Mrs. Trottman had no reason to scream is her opinion, and Mrs. Trottman could have become excited; but the witness admitted that Mrs. Trottman knew her children and her property. Appellee acknowledged he threatened to throw a pitchfork at his mother but he just stuck it in the ground. Appellee also testified along in 1955 or early part of 1956, he and his wife asked his mother to go somewhere with them but he did not know where it was they were going but when they were getting in the vehicle Mrs. Trottman stated: "Oh, you have got a gun in here!" Then stated: "What are you going to do; where are you taking me to?" It was after this that Mrs. Trottman changed her will and executed the will here in question cancelling all former wills.

The proponent of a will has the burden of making out a prima facie case of testator's testamentary capacity to make the will in question, but in this case Mrs. Trottman was admitted to have testamentary capacity unless appellee proved differently. The state of mind of the testatrix at times other than when she executed the will has no probative force except as it may tend to show the testatrix's state of mind at the time she executed the will. We think the proper rule is stated in the case of Farmer v. Dodson, Tex.Civ.App., 326 S.W.2d 57, 61, where it says:

"[1,2] Art. 8281, Vernon's Ann. Civ.St. and Section 57 of our Probate Code, Volume 17A V.A.C.S. provide, with certain limitations, that every person of 'sound mind' may make a will, but the statute does not define the term 'sound mind'. We must look to judicial decisions for a definition. 'Sound mind' and 'testamentary capacity' mean the same thing. Garcia v. Galindo, Tex.Civ.App., 189 S.W.2d 12. In order to have testamentary capacity a testator at the time he executes his will must have sufficient ability to understand the business upon which he is engaged, the effect of the act of making a will, capacity to know the objects of his bounty and their claims upon him, and the general nature and extent of his property. Nass v. Nass, Tex.Civ.App., 224 S.W.2d 280, affirmed 149 Tex. 41, 228 S.W.2d 130; McNaley v. Sealy, Tex. Civ.App., 122 S.W.2d 330; Payne v. Chance, Tex.Civ.App., 4 S.W.2d 328.

"[3] Courts and juries can go no further than to determine whether the

testator's mental capacity measures up to the standard set by the law. Though a testator may be aged, infirm, and sick he has the right to dispose of his property in any manner that he may desire if his mental ability meets the law's tests. It is not for courts, juries, relatives, or friends to say how property should be passed by will, or to rewrite a will for a testator because they do not believe he made a wise or fair distribution of his property. Bell v. Bell, Tex.Civ.App., 248 S.W.2d 978; Cruz v. Prado, Tex.Civ.App., 239 S.W.2d 650; Green v. Dickson, Tex.Civ.App., 208 S.W.2d 119; Stell v. Salters, Tex.Civ. App., 83 S.W.2d 742, 743."

We do not believe there is any evidence of probative force in this case to authorize a jury to hold that Mrs. Trottman did not have testamentary capacity on May 7, 1956 to execute the will she did. The judgment of the trial court is reversed and rendered that the will be probated.