John T. CHAMBERS, Independent Executor of the Estate of Carl N. Chambers, Sr., Deceased, Appellant,

v.

Peggy (Noblin) CHAMBERS et al., Appellees.

No. 18997.

Court of Civil Appeals of Texas, Dallas.

Sept. 16, 1976.

Rehearing Denied Oct. 14, 1976.

Philip R. Russ, William C. Odeneal, Jr., Dallas, for appellant.

William M. Jones, Dallas, for appellees.

CLAUDE WILLIAMS, Chief Justice.

Peggy Noblin, Joann Skinner, and Carol Smith brought this action in the Probate Court of Dallas County, Texas, in which they sought annulment and cancellation of an order of the probate court dated September 21, 1970, which admitted to probate an instrument as the last will of Carl N. Chambers, deceased, and appointed John T. Chambers as independent executor of the estate of Carl N. Chambers, deceased. The basis of the suit was that the holographic will of Carl N. Chambers, Sr., deceased, dated February 20, 1963, which had been admitted to probate, had been previously revoked by one or more later holographic wills dated May 8, 1964; December 20, 1964; March 26, 1968; and March 5, 1970. Trial was before the court without a jury. The court entered judgment revoking and setting aside the previous order of September 21, 1970 admitting to probate the will dated February 20, 1963 and holding that such will had been revoked by one or more of the subsequent wills. John T. Chambers, independent executor of the will previously admitted to probate, appeals from this judgment which requires the decedent's estate to be administered under the laws of intestate succession. Appellant's principal contentions are that appellees failed to prove: (1) The subsequent holographic wills contained the handwriting and signature of the decedent; (2) the decedent possessed the necessary testamentary capacity at the time of execution of the wills, and (3) the subsequent wills were executed free from undue influence. Appellant also contends that a will which is not admitted to probate cannot be used to revoke a prior will. Because we find no merit in any of these contentions, we affirm the judgment.

During the trial, appellees offered each of the four holographic wills bearing dates subsequent to the original will which had been admitted to probate, for the purpose of showing revocation of the prior will pursuant to Tex.Prob.Code Ann. § 63 (Vernon 1956). The four wills disposed of testator's estate to the appellees with the exception of nominal bequests of $1.00 each to the appellant and his brothers. This disposition is contrary to the probated will written in 1963 which disposes of all the estate to the appellant with the exception of nominal bequests of $1.00 each to appellees and their brothers. The trial court found that each of the four wills offered in evidence was in the handwriting of the decedent, Carl N. Chambers, Sr., and that the signature of each was his signature. The court also found that at the time each of the wills was executed by the decedent he had testamentary capacity, was of sound mind and was able to recognize the objects of his bounty. The court also found that each of the wills was made voluntarily, free from undue influence or duress.

■ Appellant has limited the scope of his appeal to only that portion of the judgment of the trial court ordering revocation of letters testamentary issued to John T. Chambers as independent executor of the estate of Carl N. Chambers, Sr., deceased. Appellant has limited his points on appeal to "no evidence" and "matter of law" points of error. Consequently, to determine whether the probate court erred in revoking its prior order, we must consider whether there is any evidence of probative value from which the inference may be properly drawn to reasonably support the court's findings. *Cartwright v. Canode,* 106 Tex. 502, 171 S.W. 696, 698 (1914); *Lindley v. Lindley,* 384 S.W.2d 676, 679 (Tex.1964); *Hale v. Baker,* 397 S.W.2d 937, 938 (Tex.Civ. App.—El Paso 1965, writ ref'd n.r.e.); *see In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

We first notice appellant's contention that a will which has not been filed in time to allow probate may not be used to revoke a prior will thereby requiring the testator's estate to pass by the laws of intestate succession. This matter was finally heard by the trial court in January 1976 and final judgment rendered on March 3, 1976. September 8, 1974, marked the expiration of

four years from the date of the death of the decedent. It was subsequent to the passage of this date that the four holographic wills, dated as aforesaid, were offered by appellees during the hearing. At the time these instruments were offered, the trial court received such instruments for the limited purpose of demonstrating revocation of the prior will of the decedent but expressly stated that such wills could not be admitted for the purpose of probate as provided in Tex.Prob.Code Ann. § 73 (Vernon Supp. 1975).

■■■■ Tex.Prob.Code Ann. § 63 (Vernon 1955) provides that a written will or any clause thereof shall only be revoked by a subsequent will, codicil or declaration in writing, executed with like ⁾ formality. Three of the subsequent holographic wills in question contained definite statements revoking all prior wills. If the earliest of these wills dated May 8, 1964, was executed with the required formality, it effectively revoked the probated will dated February 20, 1963, notwithstanding the fact that subsequent wills were executed revoking it. Consequently, the fact that the decedent revoked the will dated May 8, 1964, cannot have the effect of reviving the will dated February 20, 1963. *Brackenridge v. Roberts,* 114 Tex. 418, 267 S.W. 244, 247 (Tex. 1924), *reh. denied,* 114 Tex. 418, 270 S.W. 1001 (1925); *Sanderson v. Aubrey,* 472 S.W.2d 286, 288 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n.r.e.). This holographic will, although not permitted to be admitted to probate as a will, may still operate as a written instrument of revocation. *Dannenbauer v. Messerer's Estate,* 62 S.W.2d 235, 238 (Tex.Civ.App.—Texarkana 1933, writ ref'd); *Dougherty v. Holscheider,* 40 Tex. Civ.App. 31, 88 S.W. 1113, 1116–17 (Tex.Civ. App.—1905, writ dism'd w.o.j.). The facts in these cases are similar to the pending case.

In *Dannenbauer,* the contestant in probate of a will written in 1897 alleged the existence of three subsequent wills written in 1900, 1908 and 1919, each of which contained a revocation clause. The three wills were lost and could not be produced in court. The contestant did not seek their probate but only sought to defeat the validity of the will being probated. The court held there was adequate parol evidence to prove the 1900 will and 1919 will revoked the 1897 will. The only change in the 1900 will was to increase the sole beneficiary's control over the testator's property. However, the 1919 will significantly changed the disposition of the property to include other beneficiaries. Thus, although the wills could not be probated, they were used to show the revocation of a prior will. In the pending case, the May 1964 will could not be probated because the statutory time period expired but was admitted for the limited purpose of showing revocation of the 1963 will.

In *Dougherty,* the testator wrote a conditional will contingent upon his death within a few weeks resulting from an operation in the hospital. The will disposed of his property in a manner inconsistent with his prior will by bequeathing nothing to the person to whom he had bequeathed the bulk of his property in the prior will. Since the testator did not die until two years later, the court held that the will was ineffective as a testamentary disposition because the contingency upon which it was based failed to occur. However, the court further held that the written instrument revoked the first will because of the inconsistent disposition of property included therein. Therefore, the testator's property passed by intestate succession. In the pending case, the May 1964 will, containing an inconsistent disposition of property from the 1963 will, could have been a valid testamentary disposition but was rendered ineffective because it was not probated within the required time. Thus, the property passed by intestate succession. We believe these cases to be controlling when there is an inconsistent disposition between two wills as we have here.

■■■■ No reliance can be placed here upon the doctrine of dependent relative revocation which creates a presumption

against revocation in circumstances where the testator cancels or destroys a will with the present intention of making a new one immediately, and the new will is invalid for any reason. The theory is that in such circumstances the testator would have preferred the old will to intestacy. 79 Am. Jur.2d *Wills* § 563, at 675 (1975). This doctrine has been recognized, although it was not applied, by our supreme court in *Burton v. Bell,* 380 S.W.2d 561, 569 (Tex. 1964). We conclude the doctrine does not apply here because dispositive provisions of the May 1964 will, as well as the revocation clause, indicate the testator's definite intention to dispose of his property in an extremely different manner from that provided in the 1963 will. The intention of the testator as determined from all the circumstances should be the controlling factor. *Dougherty v. Holscheider, supra.* In 1 Page on Wills § 478, at 873–78 (Lifetime ed. 1941), the author submits that in a situation such as here when the revoking will, which is invalid as a testamentary disposition, disposes of property to beneficiaries different from those in a former will, the testator's intention may best be followed by allowing the property to pass by intestate succession. We agree. Consequently, since it appears that it was the testator's intention to revoke the 1963 will notwithstanding the ineffectiveness of the dispositive provisions of the May 1964 will, the trial court was correct in holding that the 1963 will had been revoked and that the property should pass under the laws of intestate succession.

■■ Appellant argues that the probate court erred as a matter of law in admitting the holographic will of May 1964 and finding that it contained the handwriting and signature of the decedent. During the trial, appellees offered the testimony of three witnesses to verify the handwriting and signature of the instrument as being that of the decedent. The testimony of one witness, Peggy Chambers, who is a beneficiary under the will, was otherwise properly excluded under the dead man statute, Tex. Rev.Civ.Stat.Ann. art. 3716 (Vernon 1926),

but her testimony verifying the handwriting and signature of the decedent was properly admitted and considered by the probate court. The testimony of the second witness, Ida Noblin, the former mother-in-law of Peggy Chambers, was properly admitted but revealed that she could not definitely identify the handwriting and signature. Finally, the testimony of the third witness, Richard Geiger, an attorney at law who had represented the decedent for several years, specifically identified the handwriting and signature on the will as that of the decedent. Thus, two credible witnesses identifying the handwriting and signature on the holographic will constituted sufficient probative evidence which clearly supports the probate court's findings.

■ Appellant, in another point of error, argued that the probate court erred as a matter of law in finding that the decedent possessed the necessary testamentary capacity to execute the holographic will because there is no evidence to support such finding. To obtain probate of a will, the applicant has the burden of proof to show that the testator was "of sound mind." Tex.Prob.Code Ann. § 88 (Vernon Supp. 1975). As used in the probate code, the term "of sound mind" means "having testamentary capacity." *Nass v. Nass,* 224 S.W.2d 280, 283 (Tex.Civ.App.—Galveston 1949), *aff'd on other grounds,* 149 Tex. 41, 228 S.W.2d 130 (1950); *Garcia v. Galindo,* 189 S.W.2d 12 (Tex.Civ.App.—San Antonio 1945, writ ref'd w.o.m.). In order to have testamentary capacity, the testator at the time he executes the will must have sufficient ability to understand his business upon which he is engaged, the effect of the act of making a will, the nature and extent of his property, the persons to whom he meant to devise and bequeath his property, the person dependent upon his bounty, and the mode of distribution among them. Also, he must have memory sufficient to collect in his mind the elements of the business to be transacted and hold them long enough to form a reasonable judgment. *Prather v. McClelland,* 76 Tex. 574, 13 S.W.

543 (1890); *Rutherford v. Robbins,* 298 S.W. 549, 549–50 (Tex.Comm'n App.1927, holding approved). The court is limited to determine whether the testator's mental capacity measures up to the legal standard of testamentary capacity. *Farmer v. Dodson,* 326 S.W.2d 57, 61 (Tex.Civ.App.—Dallas 1959, no writ). While making this determination, the court will not presume mental capacity in a probate proceeding. *Navarro v. Garcia,* 172 S.W. 723, 724 (Tex.Civ.App.—San Antonio 1915, no writ).

■ In the instant case appellees did not attempt to probate the holographic will dated May 8, 1964, because the maximum time period for probate had expired. They offered this instrument for the limited purpose of revoking a prior will. Although this instrument was not offered for probate, it still must have been executed with like formalities required by the statute for probate. *Dannenbauer v. Messerer's Estate,* 62 S.W.2d 235, 239 (Tex.Civ.App.—Texarkana 1933, writ ref'd); *Baptist Foundation v. Buchanan,* 291 S.W.2d 464, 472 (Tex.Civ.App. —Dallas 1956, writ ref'd n.r.e.). Consequently, the decedent must have possessed a legal standard of testamentary capacity when he wrote it. The question before the court was the mental capacity of the testator at the time he executed this holographic will. The burden of proof concerning mental capacity was on the appellees, the parties relying upon the will dated May 8, 1964 as a revocation of the earlier will. *Dannenbauer v. Messerer's Estate, supra* ; *Wells v. Royall National Bank,* 249 S.W.2d 695, 699 (Tex.Civ.App.—Galveston 1952, writ ref'd n.r.e.). The question, therefore, before this court is whether there is any evidence of probative force that the decedent possessed the mental capacity to revoke his will by executing this subsequent holographic will.

■ It is significant to note that decedent was an attorney at law and practiced this profession during his lifetime. The will dated May 8, 1964, demonstrates on its face a rational and sensible disposition of decedent's property. This is some evidence of the fact that the will was written during the period when the decedent was mentally competent. *Carr v. Radkey,* 393 S.W.2d 806, 814 (Tex.1965). Furthermore, attorney Geiger testified that the decedent, until 1968, was capable of caring for himself in moving about the city, as well as capable of understanding his business affairs. Geiger testified that decedent definitely knew who the members of his family were. However, Geiger did not testify as to the mental state of the decedent on the actual date that he executed the holographic will. Appellant argues that the proper inquiry concerning testamentary capacity is the condition of the testator's mind on the very day the will was executed. *Lee v. Lee,* 424 S.W.2d 609 (Tex.1968). Although this is the ultimate question, the court may also look to the state of the testator's mind at times other than when he executed his will if it tends to show the testator's state of mind at the time of the execution. *Kutchinsky v. Zillion,* 183 S.W.2d 237, 239 (Tex.Civ.App.— Galveston 1944, writ ref'd w.o.m.). Our supreme court has enunciated a principle in cases involving execution of a deed which we believe is applicable concerning execution of holographic wills. This principle is that although the issue is mental competency on the date of execution of the document, relevant evidence concerning mental competency is not restricted to the time the given act is done but may also include testimony as to the actor's mental condition either prior or subsequent to the time the act in question was done. *Cole v. Waite,* 151 Tex. 175, 246 S.W.2d 849, 852 (1952). This principle is increasingly important since a holographic will may be executed in the privacy of one's room without witnesses, thereby imposing an impossible burden to show the mental state of the testator at the very moment of execution.

■ Appellant, who is not a lawyer, relies on his own testimony concerning decedent's testamentary capacity. A lay witness may testify concerning the mental capacity of a decedent and express an opinion thereon after stating his observations and

knowledge of the testator's actions, but he may not express an opinion on the legal capacity to revoke a will. *Brown v. Mitchell,* 88 Tex. 350, 31 S.W. 621, 627–28 (1895); *Campbell v. Campbell,* 215 S.W. 134, 138 (Tex.Civ.App.—Dallas 1919, writ ref'd); *Chambers v. Winn,* 137 Tex. 444, 154 S.W.2d 454, 455 (Tex.Comm'n App.1941, opinion adopted); *Kutchinsky v. Zillion,* 183 S.W.2d 237, 239 (Tex.Civ.App.—Galveston 1944, writ, ref'd w.o.m.). Our supreme court has held that in a will contest, the layman witness may be asked, assuming he knows, whether the testator knew or had the capacity to know the objects of his bounty, the nature of the transaction in which he was engaged, or the nature and extent of his estate. *Carr v. Radkey,* 393 S.W.2d 806, 813 (Tex.1965). In this case the appellant testified, as decedent's son having observed decedent for many years, that by 1966 and, particularly, October 1968, the decedent could not be considered to have retained testamentary capacity. Upon further questioning, the appellant stated that his reference to testamentary capacity meant decedent's knowledge of his bounty. However, appellant did not testify concerning the decedent's knowledge of his bounty prior to 1966. Appellant testified that he considered the decedent to have a good sound mind when he borrowed money from the decedent in both March and April 1964, approximately one month prior to the execution of the holographic will. Because of both the appellant's and Geiger's testimony and the close proximity of the above dates, we hold that there is competent probative evidence of mental capacity on which the trial court could have based its findings that the decedent possessed the necessary testamentary capacity.

 In another point of error, appellant asserts that the trial court erred as a matter of law in finding that the holographic will was executed voluntarily and free from undue influence. Since the appellees established that the 1964 instrument was in the testator's handwriting and that he had testamentary capacity at that time, the burden shifted to appellant to show the 1964 instrument was the result of undue influence. *McIntosh v. Moore,* 22 Tex.Civ. App. 22, 53 S.W. 611, 614 (Tex.Civ.App.— 1899, no writ). Thus appellant must have shown: (1) The existence and exertion of an influence; (2) the effective operation of the influence to subvert or overpower the mind of the testator at the time of execution; and (3) the execution of a testament which the maker would not have executed but for the influence. *Rothermel v. Duncan,* 369 S.W.2d 917, 922 (Tex.1963); *Reynolds v. Park,* 485 S.W.2d 807, 813 (Tex.Civ. App.—Amarillo 1972 writ ref'd n.r.e.). The only evidence which implies undue influence was appellant's own testimony stating that he had been told by the decedent that in 1962 the appellees withdrew money from the decedent's bank account, threatened to place the decedent in a mental institution, and harassed the decedent into allowing one of the appellees to remove her legal disability prior to the age of attaining majority. We cannot agree with appellant that this evidence establishes undue influence as a matter of law.

 Appellant also argues that the will dated May 8, 1964, should not have been allowed into evidence to contest the probated will because it was not filed with the court as an exhibit within two years after the initial probate. Appellant does not cite cases to support this position but instead relies only on Tex.Prob.Code Ann. § 93 (Vernon 1956) which only requires that after a will is admitted to probate, any interested person may *institute suit* in the proper court to contest the validity of the probated will within two years after the date of probate. We have found no cases under this provision of the code requiring the actual revoking instrument to be filed within the two-year period. Consequently, we overrule this point of error.

Careful consideration of all of appellant's points of error fails to reveal any reversible error on the part of the trial court and they are, accordingly, overruled.

The judgment of the trial court is affirmed.

Affirmed.