Kenneth O. RICH, Jr., Appellant,

v.

Kenneth O. RICH, Sr., Individually and As Administrator of the Estate of Adalene C. Womack, Deceased, Appellee.

No. 17651.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Dec. 31, 1980.

Rehearing Denied Jan. 29, 1981.

Buzbee & Kleiber, Lester R. Buzbee, III, Houston, for appellant.

Bates & Lee, Robert D. Bates, Houston, for appellee.

Before PEDENS and EVANS, JJ.

DOYLE, Justice.

This appeal involves a will contest. Kenneth Rich, Jr., filed an application to probate the holographic will of his grandmother, Adalene C. Womack, deceased. Ken-neth Rich, Sr., father of the appellant and only child of the deceased, contested the will alleging the deceased lacked testamentary capacity to write the will; that she had revoked said will; that she was suffering from an insane delusion at the time she executed the will; and that she was unduly influenced to write and execute said will. Trial was to a jury, which answered two special issues finding that the deceased lacked testamentary capacity at the time she executed the will and that the will had not been revoked. Judgment was entered on the verdict and the will was denied admission to probate. Appellant filed a motion for judgment non obstante veredicto and a motion for new trial, which were overruled.

We reverse and render.

Appellant asserts five points of error, the first three of which urge that there is no evidence, insufficient evidence or that the jury's finding that the deceased lacked testamentary capacity when she executed her will is against the great weight and preponderance of the evidence.

Testamentary capacity is legally defined as:

By testamentary capacity is meant that the person at the time of the execution of the Will has sufficient mental ability to understand the business in which he is engaged, the effect of his act making the Will, and the general nature and extent of his property. He must also be able to know his next of kin and natural objects of his bounty. He must have memory sufficient to collect in his mind the elements of the business to be transacted and to hold them long enough to perceive at least their obvious relation to each other, and to be able to form a reasonable judgment as to them.

*Duke v. Falk*, 463 S.W.2d 245 (Tex.Civ.App.—Austin 1971, no writ); *Smith v. Smith*, 389 S.W.2d 498 (Tex.Civ.App.—Austin 1965, writ ref'd n. r. e.); *Carr v. Radkey*, 393 S.W.2d 806 (Tex.1965).

Pursuant to Section 88(b) of the Texas Probate Code, V.A.T.S. (1969), proponents of the will have the burden of prov-

ing that decedent had testamentary capacity. Contestants on the other hand, need only produce evidence sufficient to raise an issue for the jury as to whether such capacity existed at the time of the making of the will. *Chambers v. Chambers,* 542 S.W.2d 901 (Tex.Civ.App.—Dallas 1976, no writ). In establishing testamentary capacity, the proponent is not required to prove that the testator knew the "true value of his property." *Nowlin v. Trottman,* 348 S.W.2d 169 (Tex.Civ.App.—Amarillo 1961, writ ref'd n. r. e.). The testator's will should not be set aside solely because the testator is old or feeble, except in extreme cases of imbecility. *Hamill v. Brashear,* 513 S.W.2d 602 (Tex.Civ.App.—Amarillo 1974, writ ref'd n. r. e.); *Green v. Dickson,* 208 S.W.2d 119 (Tex.Civ.App.—Galveston 1948, writ ref'd n. r. e.); *Salinas v. Garcia,* 135 S.W. 588 (Tex. Civ.App.1911, writ ref'd).

■ Proper inquiry concerning testamentary capacity is the condition of the testator's mind on the very day the will was executed. *Lee v. Lee,* 424 S.W.2d 609 (Tex. 1968). Although this is the ultimate question, the court may also look to the state of the testator's mind at time other than when he executed his will, if it tends to show the testator's state of mind at the time of the execution. *Chambers v. Chambers,* supra; *Cole v. Waite,* 151 Tex. 175, 246 S.W.2d 849 (1952); *Kutchinsky v. Zillion,* 183 S.W.2d 237 (Tex.Civ.App.—Galveston 1944, writ ref'd w. o. m.).

Appellee sought to raise the issue of testamentary capacity for the jury by the following testimony: The deceased's daughter-in-law, Donna Joan Rich, testified that she saw Mrs. Womack on February 11th or 12th of 1971 and that she did not think the deceased was capable of making the will dated February 10, 1971. Mrs. Rich testified that Mrs. Womack telephoned her and came to her home a day or two after writing the will. She said Mrs. Womack seemed upset and had been crying all night; her eyes were almost swollen closed. She further testified Mrs. Womack told her she had been up all night writing nasty letters to her mother, her half-sister, her husband and

her son. She also explained Mrs. Womack was very upset because her son had attended his father's funeral. She said Mrs. Womack was jealous of her ex-husband. Regarding Mrs. Womack's general appearance between 1970 and 1971, Mrs. Rich stated that Mrs. Womack had lost a tremendous amount of weight, her eyes were black clear down on her check bone, she shook quite a bit, had a loss of appetite and general deterioration.

Two other witnesses, Mr. and Mrs. Roebuck, who were close friends of the Womacks, could not testify as to the deceased's testamentary capacity on February 10, 1971. Instead, they testified of a time period between late 1970 and early 1971. They testified Mrs. Womack's health was poor and that she seemed disturbed and depressed on many occasions. They further testified she seemed to be confused a good many times and that she could not carry discussions to a conclusion. Appellee presented no other testimony bearing on testamentary capacity.

On the other hand, there was testimony that Mrs. Womack recognized everyone and often spoke of her family. It was undisputed that she was actively engaged in the real estate business, selling her home and buying a new one during the 1970–1971 period. While this case was submitted to the jury on the issue of lack of testamentary capacity, appellee has raised, by his pleadings and brief the question of Mrs. Womack's suffering from an insane delusion as having a bearing upon her capacity to execute the questioned will. We discuss this point to show the full development of the facts on the case below in view of our reversal and rendition.

■ Texas law follows the general rule that where no general insanity is shown, but only some specific insane delusion or monomania, the will is valid unless the terms of it appear to have been directly influenced by the infirmity. The mental error must have been actual operative in the production of the instrument. *Prather v. McClelland,* 76 Tex. 574, 13 S.W. 543 (1890); *Gulf Oil Corporation v. Walker,* 288

S.W.2d 173 (Tex.Civ.App.—Beaumont 1956, no writ).

The *Gulf* case continues:

"A man may believe himself to be the supreme ruler of the universe and nevertheless make a perfectly sensible disposition of his property, and the courts will sustain it when it appears that his mania did not dictate its provisions." This is the language of Judge Cooley in *Fraser v. Jennison*, 42 Mich. 206, 3 N.W. 882, 900.

In examining the entire record, we find that the testimony does not show testamentary incapacity on Mrs. Womack's part. We must now determine whether the evidence shows that the terms of the will have been directly influenced by some specific insane delusion. Appellee urges that about the time Mrs. Womack executed her will, she was angered by her son's recent attendance at his father's funeral, and that such anger so affected her mind, she made an unnatural disposition of her property. A reading of the will leaves no doubt as to what Mrs. Womack was attempting to do when she drew it and why. Written as it was, wholly in her handwriting, she specifically declared that "this is not something I have done in anger. I have good reason for doing this ever since I spent all my money on the house and furniture at 3315 Laurel Creek Drive..." This was in explanation as to why she was devising "everything that I own in the world to my husband, T. J. Womack during his lifetime, then it is to go to my grandsons Kenny Rich and Keven Rich after they are 25 years of age and are settled down and married to go only for a home or farmland so no one can benefit from all my work as my son and wife have treated me so bad, I let them have a small fortune for a poor person to make by sweat and blood like I did. I told them it was so I could help them enjoy it while I was here with them, but I am no longer welcome out there." By its entirety the will clearly shows that Mrs. Womack had the capacity to make a will. Not only did she name her son, Kenneth Rich therein, but set forth what he was to get and explained why he was not receiving more. Mrs. Womack was

displeased with her son and his wife from 1965 until her death. Thus it appears that Mrs. Womack was not suffering from an insane delusion when she executed her will, but was merely expressing her desire to not reward her son for a course of conduct which she felt subjected her to the pangs of filial ingratitude.

We find that the evidence, both by testimony and by the will itself, meets every test of testamentary capacity set forth in the court's instruction to the jury under special issue one. This record will admit of no other conclusion than that Mrs. Womack knew exactly what she wanted to do with her earthly possessions, and the jury's finding that she lacked testamentary capacity is so against the great weight and preponderance of the evidence as to be manifestly wrong.

Reviewing the evidence as we are required to do under Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.R. 361 (1960); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Lucas v. Hartford Accident and Indemnity Company*, 552 S.W.2d 796 (Tex.1976), we sustain appellants' points of error one, two and three. In view of such ruling, we deem it unnecessary to consider appellants' remaining points of error.

Appellee brings one cross-point of error saying that the jury's finding that the will of Mrs. Womack dated February 10, 1971, was not revoked is against the great weight and preponderance of the evidence.

In Texas, the statutory method of revoking a will is exclusive. *Halamicek v. Halamicek*, 542 S.W.2d 246 (Tex.Civ.App.—Corpus Christi 1976, no writ); *Anderson v. Dubel*, 580 S.W.2d 404 (Tex.Civ.App.—San Antonio 1979, writ ref'd n. r. e.). Pursuant to Section 63 of the Texas Probate Code, V.A.T.S. (1956), a will in writing shall not be revoked "except by a subsequent will, codicil or declaration in writing, executed with like formalities..." Appellee contends that a holographic will executed by Mrs. Womack in 1977 must revoke the 1971 will. Appellee concedes that the 1977 will

does not contain any express language of revocation, but argues that contrary dispositions of property in the 1977 will revoke dispositions of identical properties in the 1971 will. *Van Hoose v. Moore*, 441 S.W.2d 597 (Tex.Civ.App.—Amarillo 1969, writ ref'd n. r. e.).

 In view of the fact that the 1977 will was declared to be executed under undue influence in a prior judicial hearing, this will cannot revoke the 1971 will. A purported will judicially determined to be void for undue influence was never "executed" and hence could not revoke a former will under the statute requiring a revoking will or declaration to be executed with like formalities required for execution of wills. *Womack v. Woodson*, 169 S.W.2d 786 (Tex. Civ.App.—Beaumont 1943, writ ref'd). Appellee's cross-point of error is overruled.

 Where the evidence has been fully developed as to all issues raised in the trial court, this court, upon reversal, is authorized to render the judgment that should have been rendered. Rule 434, T.R.C.P.; *Cortimiglia v. Miller*, 326 S.W.2d 278 (Tex.Civ.App. —Houston 1959, no writ).

Accordingly, the judgment of the trial court is reversed and judgment is rendered that the instrument dated February 10, 1971, be admitted to probate as the last will and testament of Adalene C. Womack, deceased.