Affirmed and Memorandum Opinion filed September 26, 2006








Affirmed and Memorandum Opinion filed September 26, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00062-CV

____________

 

LOUIS DICKSON, Appellant

 

V.

 

JOHN E. SWAIN, Appellee

 

 



 

On Appeal from the County
Court at Law No. 3

Fort Bend County, Texas

Trial Court Cause No. 17,298

 



 

M E M O R A N D U M   O P I N I O N

This is an appeal from a will contest filed by a step-son
against the independent executor of his step-mother=s estate.  The
contestant alleged the testatrix lacked testamentary capacity to execute her
will.  Returning a verdict against the contestant, a jury found that the
testatrix had testamentary capacity on the day she signed the will.  The
contestant now challenges the trial court=s denial of his
motion for  judgment notwithstanding the verdict. We conclude the evidence is
legally sufficient to support the jury=s finding, and we
affirm the trial court=s judgment. 








I.  Factual and Procedural
Background

Agnes Dickson died on August 24, 2002, at the age of
ninety-one years.  At the time of her death, she lived in Fort Bend County,
Texas.  Two  and a half years before she died, on February 15, 2000, Agnes
signed her last will and testament at the office of her attorney, John E.
Swain, who was also the independent executor named in the will.  Tyler Swain
and Barbara Kocian witnessed the signing of the will.  Less than a week after
Agnes=s death, John
Swain filed an application for probate of Agnes=s will.  

Louis Dickson, Agnes=s step-son filed a
will contest alleging improper execution of the will, lack of testamentary
capacity, and undue influence.  A jury returned a verdict in favor of admitting
the will to probate.  The jury found that Agnes had testamentary capacity at
the time she executed the will. The trial court admitted the will to probate
upon entry of judgment on  the jury verdict.  Louis filed a motion for judgment
notwithstanding the verdict requesting that the trial court disregard the jury=s verdict and
arguing that the evidence proved that Agnes did not have testamentary capacity
at the time she executed the will.  Louis did not raise any other issues in
this motion, nor did he file a motion for new trial challenging the factual
sufficiency of the evidence. 

II.  Issue Presented

Louis presents the following issue on appeal: 








The issue presented by appellant is
whether the trial court erred in not granting the Plaintiff=s Motion for
Judgment Notwithstanding the Verdict because the evidence presented at trial
was legally insufficient to support the jury=s verdict that the
testatrix had the required testamentary capacity[1]
at the time of the will=s execution, and whether the jury=s finding that the
will had been properly executed is against the overwhelming weight of the
evidence. [2]

III.  Standard of Review

At any course of trial proceedings, judgment without or
against a jury verdict is proper only when the law does not allow reasonable
jurors to decide otherwise. City of Keller v. Wilson, 168 S.W.3d 802,
823 (Tex. 2005).  The test for legal sufficiency is the same for directed
verdicts and judgments notwithstanding the verdict.  Id.  When reviewing
the legal sufficiency of the evidence, we review the evidence in the light most
favorable to the challenged finding and indulge every reasonable inference that
would support it.  Id. at 822. We credit favorable evidence if a
reasonable factfinder could, and disregard contrary evidence unless a
reasonable factfinder could not. Id. at 827.  The evidence is legally
sufficient if it would enable fair‑minded people to reach the verdict
under review.  Id.

IV.  Analysis








Louis complains that the evidence adduced at trial is
legally insufficient to support the jury=s finding that
Agnes had testamentary capacity at the time she signed her will.  The Texas
Probate Code requires proof that the will=s testatrix had a Asound mind@ before probate
will be allowed.  See Tex.
Prob.Code Ann. ' 88(b)(1) (Vernon 1980).  Texas courts
have defined Asound mind@ to mean Atestamentary
capacity.@  See Chambers v. Chambers, 542 S.W.2d 901, 906
(Tex. Civ. App.CDallas 1976, no writ).  Thus, to form a
valid will the testatrix must have had Atestamentary
capacity@ when the will was
executed.  See id. at 906. 

A testatrix has testamentary capacity when she has
sufficient mental ability to understand that she is making a will, the effect
of making a will, and the general nature and extent of her property.  Bracewell
v. Bracewell, 20 S.W.3d 14, 19 (Tex. App Houston [14th Dist.] 2000, no
pet.).  She also must know the natural object of her bounty, the claims upon
them, and have sufficient memory to collect in her mind the elements of the
business transacted and hold them long enough to form a reasonable judgment about
them.  Id.  In a will contest, the pivotal issue is whether the
testatrix had testamentary capacity on the day the will was executed. Lee v.
Lee, 424 S.W.2d 609, 611 (Tex. 1968).  However, evidence of the testatrix=s state of mind at
other times can be used to prove her state of mind on the day the will was
executed provided the evidence demonstrates a condition affecting her
testamentary capacity was persistent and likely present at the time the will
was executed. Croucher v. Croucher, 660 S.W.2d 55, 57 (Tex. 1983). 

At trial, the jury was asked the following question with
regard to Agnes=s testamentary capacity to execute the
February 15, 2000 will:

Do you find from a preponderance of
the evidence that at the time Agnes R. Dickson executed the purported will
dated February 15, 2000, she had testamentary capacity, as that term is
defined?[3]








In
response to that question, the jury answered: AYes.@  

Evidence

Because an analysis of the legal sufficiency of this
verdict requires a review of the evidence that tends to support the jury=s finding, we
consider the following relevant testimony.

Testimony
of Jeffrey Kuhn (Proponent Witness)

John Swain, as the proponent of the will, had the burden of
proving that Agnes was of sound mind at the time of the will=s execution.  See
Croucher, 660 S.W.2d at 57.  The first witness was Jeffrey Kuhn, a lawyer
who had represented Agnes around January of 1997, in a lawsuit against her
step-son, Louis, the contestant of the will.  This lawsuit involved the
ownership of a tract of land in Fort Bend County.  The case settled during
trial in September 2000, less than six months before Agnes met with John Swain
for the first time.  Mr. Kuhn testified that Agnes grasped the legal issues
quickly, and Awas very helpful in terms of being an accurate
historian about her family@ and the land that was in dispute.  Mr.
Kuhn testified that, during his three-year attorney-client relationship with
Agnes, she was mentally competent, alert, and able to understand and handle her
own legal affairs.  Mr. Kuhn described Agnes as being very smart and
independent.  Mr. Kuhn=s last face-to-face meeting with Agnes was
in January 2000, when he met with her to finalize the settlement agreement for
her litigation against Louis.  Mr. Kuhn testified that Agnes was alert and had
no problem comprehending the settlement agreement or any of the accompanying
documents.  Mr. Kuhn stated that nothing concerned him about Agnes=s competence
during this meeting.  








Testimony
of John Swain (Proponent Witness)

John Swain, the proponent and independent executor of the
will,[4] 
testified that he met with Agnes in January 2000, shortly after the funding of
her litigation settlement with Louis.  According to Mr. Swain, Agnes sought
his  help in another Afamilial@ dispute with her
niece, Estella Snowden. At one point, Agnes, anticipating that she might need
help in the future,  made Ms. Snowden a co-signer on her bank account at
Southwest Bank.  Agnes provided all of the funds in the account. Later, she
requested that Ms. Snowden remove Ms. Snowden=s name from the
account, but  Ms. Snowden refused.  During her meeting with John Swain, Agnes
asked him to draft a ADurable Statutory Power of Attorney@ so that she could
replace Ms. Snowden as her agent, and appoint her long-time friend, Dorothy
Benefield.

After signing the Power of Attorney, Agnes asked John Swain
to rewrite her will leaving the house in which she lived to Dorothy Benefield
and to split the remaining property and assets among nieces and nephews.  John
Swain testified that Agnes stated that she did not want Louis to inherit
anything because Ahe=s already gotten
my money and I don=t want him to inherit anything from me.@  Ms. Snowden=s name (as a
niece) was replaced with Dorothy Benefield=s name.  On
February 15, 2000, Agnes went to John Swain=s office to
execute the will. John Swain testified that during all of his encounters with
Agnes, she was alert and her memory was good. 

Tyler
Swain (Proponent Witness)








Tyler Swain, a witness to the signing of Agnes=s will, is the son
of John Swain and a lawyer in his father=s firm.  Tyler
Swain testified that Agnes responded appropriately to every will-execution
question, never strayed off the topic, appeared focused, and had no difficulty
understanding any of the instructions given to her.  Tyler Swain stated that he
never had any Amisgivings@ or concerns
regarding Agnes=s mental focus and understanding of the
act in which she was engaged.  He observed her sign every page of the will and
execute both the will and the self-proving affidavit.

Barbara
Kocian (Proponent Witness)

Barbara Kocian, who worked as a bookkeeper for John Swain, witnessed
the signing of Agnes=s will.  Ms. Kocian testified that Agnes
stated that it was Aher intention to execute the will.@  According to Ms.
Kocian, Agnes spoke clearly, was attentive, understood the nature of what she
was doing, and always responded appropriately to questions.  Ms. Kocian also
witnessed Agnes sign every page of the will and execute the final page and
self-proving affidavit. 

Louis
Dickson (by deposition) (Proponent Witness) 

The proponent of the will also offered Louis=s deposition
testimony.  When asked whether he thought Agnes=s will was
executed properly, Louis responded that he did not believe the will was Aproper@ because he was
not there for the signing and was not included as a beneficiary.  There was no
testimony from Louis that would support a finding of lack of testamentary
capacity. 

Dorothy
Marie Benefield (Proponent Witness) 

Dorothy Benefield, one of the beneficiaries of the will,
testified that she first met Agnes in 1988, and that they were good friends and
spent time together.  Ms. Benefied helped Agnes by driving her to various
places, such as the doctor, the grocery store, and the bank.  Ms. Benefied also
helped take care of her by cooking her meals, bathing her, and providing a
place for her to stay after she was hospitalized in April 2000, for high blood
sugar levels.  Ms. Benefield testified that Agnes was mentally competent, had a
very sharp  mind, and was very clear and cogent during conversations.   








Ms. Benefield drove Agnes to Mr. Swain=s office on the
day Agnes executed her will.  Ms. Benefied noted that Agnes=s behavior was
normal and unimpaired.  Ms. Benefield testified that she spent significant time
with Agnes before and after the execution of the will, up until the day that
Agnes passed away.  Louis=s attorney, questioning Ms. Benefield in
front of the jury, asked the following question, AAnd at the time
she put the money in your name and her name, in your opinion, she was of sound
mind.@  Ms. Benefield
replied, AYes, sir.@  

Dr.
Jaroslaw Jac (by deposition) (Contestant Witness)

Dr. Jaroslaw Jac, a doctor who met Agnes for the first time
upon her admission to Sugar Land Texas Hospital on March 28, 2000, six weeks
after the execution of the will, testified that her blood sugar levels became
critically elevated and dangerous.  Dr. Jac was her treating physician during
her seven-day hospital stay, but never treated or saw her after she was
discharged from the hospital.  Dr. Jac testified that Agnes was mentally
incompetent, had an altered mental status (moderate multiinfarct dementia),
chronic hypertension and mellitus diabetes.  He was unable to determine how
long she had suffered from dementia, but stated that this condition was most
likely related to her high blood pressure and hypertension.  Dr. Jac further
testified that Agnes=s confusion and lethargy were principally
caused by acute hyperglycemia and that when her blood sugar levels stabilized
over the course of her hospitalization, Agnes was no longer drowsy, and only
partially confused.  When Dr. Jac was asked about Agnes=s score on a Mini
Mental Status Examination (MMSE) administered on April 4, 2000, he stated that
her acute situational confusion may have affected the score.  Dr. Jac confirmed
that while he made a diagnosis of chronic dementia, Agnes still managed to
score moderately well on the exam.  Without the proper medical records, Dr. Jac
could not say whether Agnes suffered from this same condition six weeks
earlier, at the time she signed her will.  








Nora
Cyrus (Contestant Witness)

Agnes=s niece, Nora Cyrus was one of the
beneficiaries of the will. Ms. Cyrus testified that while her aunt was
recovering from a hospitalization in 1999, because of a high level of
potassium, Agnes had a Adelusion@ that Dorothy
Benefield was trying to kill her.  However, when asked whether she had an
opportunity to formulate an impression of whether her aunt was of Asound mind,@ Ms. Cyrus stated
that her aunt was Abetwixt and between.@  She further
testified that she did not think her aunt was of sound mind because Agnes told
her that Mr. Swain was a Ablack@ man, which he is
not.  Ms. Cyrus also stated that she believed Louis was treated unfairly and
should have received more of his Ashare@ of the estate. 

Lois
Howard (Contestant Witness)

Agnes=s grand-niece, Lois Howard, testified as a
contestant witness.  Her testimony centered around Agnes=s condition in
2002, two years after the execution of the will.  She testified that in 2000,
after Agnes=s husband (Louis=s father) had
passed away, Agnes started acting differently toward Louis.  When asked if she
had an opinion on whether Agnes was of sound mind, Ms. Howard testified that on
some days she would be herself, and on other days, she would not.  Ms. Howard
further testified that when her great-aunt was driven to the hospital via
ambulance (shortly before her death in August 2002), Agnes accused the
ambulance driver of trying to rape her.  Ms. Howard stated that this Aobviously untrue@ statement made
her question Agnes=s mental state.  Ms. Howard, however,
never observed Agnes at or near the time period of January or February of 2000,
when she executed the will.

Robert
Dickson, II (Contestant Witness)








The last witness offered against the will=s probate was
Robert Dickson, II, one of Agnes=s nephews.  He had
very little testimony to offer regarding Agnes=s mental capacity
in 2000, or even near that time.  Robert Dickson testified that an incident in
1986 caused him to be concerned about his aunt=s behavior.  He
stated that when he went to visit her around Christmastime in 1986, Agnes told
him that she was going to call the police because she believed that he was Atrying to kill
her.@  After this
incident, Robert Dickson did not have any contact with Agnes, other than from a
distance at an occasional family gathering, such as a funeral.

Legal Sufficiency Review 

The burden of proof was on Louis to demonstrate that no
evidence supports the jury=s finding that Agnes had testamentary
capacity when she executed the will.  Louis asserts that the testimony summarized
above is legally insufficient to support the jury=s finding that
Agnes had testamentary capacity on the day she executed the will.  When a party
with the burden of proof challenges an adverse finding, he must demonstrate on
appeal that the evidence establishes, as a matter of law, all vital facts in
support of the issue.  Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241
(Tex. 2001).  If there is no evidence to support the finding, we then examine
the entire record to determine if the contrary proposition is established as a
matter of law.  Id.  Louis=s
legal-sufficiency challenge to should be sustained only if the contrary
proposition is conclusively established.  Id. 

The jury, listening to the evidence presented at trial, was
the sole judge of the credibility of the witnesses and the weight to be given
their testimony.  Leyva v. Pacheco, 358 S.W.2d 547, 549 (Tex. 1962);Miles
v. Royal Indemnity Co., 589 S.W.2d 725, 728 (Tex. Civ. App.CCorpus Christi
1979, writ ref'd n.r.e.).  If there is a conflict between a witness=s direct testimony
and his testimony given on cross-examination, as well as a conflict among
different witnesses, it is for the jury to determine which statement is
correct.  Webb v. Jorns, 488 S.W.2d 407, 411 (Tex. 1973).  A jury is not
bound by the testimony of any one witness and may accept all, part, or none of
the testimony of the witnesses and may accept part of testimony of one witness
and part of another or members of the jury may draw their own deductions from
all the evidence in the case.  See Bayou Terrace Inv. Corp. v. Lyles, 881
S.W.2d 810, 813 (Tex. App.CHouston [14th Dist.] 1994, no writ).  








Though a testatrix  may be aged, infirm, and sick she has
the right to dispose of her property in any manner that she may desire if her
mental ability meets the law=s tests.  See Bell v. Bell, 248
S.W.2d 978, 991 (Tex. Civ. App.CAmarillo 1952, writ ref=d n.r.e.) (holding
evidence insufficient to establish that testator lacked mental capacity).  It
is not for courts, juries, relatives, or friends to say how property should be
passed by will, or to rewrite a will for a testatrix because they do not
believe she made a wise or fair distribution of her property. Cruz v. Prado,
239 S.W.2d 650, 652 (Tex. Civ. App.CSan Antonio 1951,
no writ) (stating that there is no presumption against a will because made by
man advanced in age, and incapacity cannot be inferred from enfeebled condition
of mind or body).  The right of a grantor to dispose of her property according
to her own wishes is sacred, and should be guarded with as much care, as any
rights due to the living.  See Salinas v. Garcia, 135 S.W.588, 590B91 (Tex. Civ. App.
1911, writ ref=d).  

Reviewing the
above-stated evidence under the appropriate standard of review, we conclude
that the evidence is legally sufficient to support the jury=s finding that
Agnes had testamentary capacity when she executed her will.  See Long v.
Long, 196 S.W.3d 460, 466-67 (Tex. App.CDallas, no pet.)
(finding the evidence legally sufficient to support court=s finding that
testator was not unduly influenced).  We overrule Louis=s sole issue as
stated in the AIssue Presented@ section of this
opinion[5]
and affirm the judgment of the trial court.

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

Judgment rendered
and Memorandum Opinion filed September 26, 2006.

Panel consists of
Justices Anderson, Edelman, and Frost.









[1]  Although other issues were presented in the will
contest, Louis did not raise them in his motion for judgment notwithstanding
the verdict, and did not raise them in this appeal. 





[2]  In parts of his briefing, it appears that Louis is
challenging both the factual and legal sufficiency of the evidence. However, he
failed to raise his factual-sufficiency challenge at trial by way of a motion
for new trial and therefore did not preserve his factual-sufficiency challenge
for appellate review.  See Tex.
R. Civ. P. 324(b)(20, (3) (concluding that a motion for new trial is a
prerequisite for a complaint of factual sufficiency of the evidence to support
a jury finding, and a complaint that a jury finding is against the overwhelming
weight of the evidence).  In addition, to the extent Louis=s brief may be read to raise this issue, he has waived
it by failing to present argument, authorities, and record citations supporting
his contentions. Texas Rule of Appellate Procedure 38.1(h) requires appellate
briefs to Acontain a clear and concise argument for the
contentions made, with appropriate citations to authorities and to the record.@ Tex. R. App.
P. 38.1(h). Appellate courts must construe the Texas Rules of Appellate
Procedure reasonably, yet liberally, so that the right to appeal is not lost by
imposing requirements not absolutely necessary to effect the purpose of a rule.
Republic Underwriters Ins. Co. v. Mex‑Tex, Inc., 150 S.W.3d 423,
427 (Tex.2004); see Tex. R. App.
P. 38.9.  Louis=s passing reference to a factual sufficiency challenge
in his Aissue presented@
section of his brief, without more,  fails to satisfy even this liberal
standard.  Therefore, in this appeal, we determine solely whether the evidence
is legally sufficient to support the jury=s
finding that Agnes had testamentary capacity at the time she executed her will.


 





[3]  The jury charge defined Atestamentary capacity@ as follows: 

 

To have testamentary capacity, the testator must have
been capable of understanding the business she was engaged in, the nature and
extent of her property, the persons to whom she meant to devise and bequeath
it, the persons dependent upon her bounty, and the mode of distribution among
them; that she must have had memory sufficient to collect in her mind the
elements of the business to be transacted, and to hold them long enough to
perceive, at least, their obvious relation to each other and be able to form a
reasonable judgment as to them. 

You are
instructed that to make a valid will, the person making the same must have
testamentary capacity. 





[4]  Louis asserts John Swain=s testimony should not be considered because Mr. Swain
has an interest in the will. This statement is inaccurate. Although Mr. Swain
was the executor of the will and would be paid fees as the executor of the
will, he was not a beneficiary of the will. 





[5]  Because we conclude that the evidence is legally
sufficient to support the jury=s verdict, it
is not necessary for us to reach any other arguments raised by the parties.