Helen JONES, et al., Appellants,

v.

Judy Fowler LaFARGUE, et
al., Appellees.

No. C14–87–00327–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 11, 1988.
Rehearing Denied Sept. 8, 1988.

Jim Earthman, Meyer Jacobson, Houston, for appellants.

Mark Douglas Herbert, Houston, for appellees.

Before JUNELL, CANNON and ELLIS, JJ.

## OPINION

JUNELL, Justice.

This case concerns a will contest. Appellants are the named beneficiaries under the

purported will of Pinkney H. Fowler. Appellees are the nieces and nephews of the deceased.

Pinkney H. Fowler died on November 7, 1983. The following morning at 8:48 A.M., attorney James B. Earthman III offered for probate an instrument purported to be Mr. Fowler's last will and testament. With the exception of a charitable bequest of $1000 to Sacred Heart Co–Cathedral (not a party to this appeal), all of decedent's property was left to appellants, J.R. Hensley, James B. Earthman III, and Helen Jones. On November 22, 1983, the will was admitted to probate and, according to its terms, J.R. Hensley was appointed independent executor without bond. The decedent had owned a residence which had been in the family for over one hundred years, other realty, antique furniture, a car, jewelry and bank accounts. The Inventory, Appraisement and List of Claims, filed by Mr. Hensley as independent executor, valued the estate at $464,784.[1]

Appellees, nieces and nephews of the deceased, filed suit to have the will set aside. Their original petition alleged that at the time the will was signed their uncle lacked the necessary testamentary capacity to execute a will and that appellants, all beneficiaries under the will, exercised undue influence over the decedent. Trial to a jury resulted in a finding that Pinkney H. Fowler lacked testamentary capacity. The trial court rendered judgment that the will be set aside and the previously issued letters testamentary be revoked. The beneficiaries, Helen Jones, J.R. Hensley, and James B. Earthman III, appeal, complaining that a defect of parties deprived the trial court of jurisdiction and, alternatively, the evidence was factually insufficient to support the jury finding that Pinkney Fowler lacked testamentary capacity the day he executed the will. We affirm the judgment of the trial court.

All appellants assert that because all necessary and indispensable parties were not joined the trial court lacked jurisdiction to render judgment. Appellant Helen Jones' argument, contained in her first three points of error, is based upon a contention that the appellees were claiming to be heirs at law of the decedent and, therefore, the trial court should have required them to prove their relationship as mandated by sections 48, 49 and 50 of the Texas Probate Code. Interwoven in her discussion is an attack on the legal and factual sufficiency of the evidence to support a finding that all necessary and indispensable parties were before the court. She insists that under the record "there was no earthly way for the trial court to make the finding that the [a]ppellees were persons interested in the estate, or heirs." The thrust of Mrs. Jones's argument appears to be that without a determination of who all the heirs at law were, the trial court lacked jurisdiction because it did not have all necessary and indispensable parties before it. In support of her contention, Mrs. Jones cites an appellate court opinion for the proposition that "[w]hen the will has already been admitted to probate and an action is brought to set it aside, the legatees and devisees named in the will and heirs at law whose interests in property will be affected by a construction of the will are indispensable parties and must be made parties in accordance with Rule 39 [of Texas Rules of Civil Procedure]." *Soto v. Ledezma,* 529 S.W.2d 847, 850 (Tex.Civ.App.—Corpus Christi 1975, no writ). We do not agree that these statements accurately represent current law or accurately reflect the record.

The sections of the Texas Probate Code cited by appellant Jones are a part of Chapter III, entitled *Determination of Heirship,* They are distinct from those sections applicable to trying the issue of the validity

---

**1.** The value given is somewhat misleading. From the evidence adduced at trial, actual value appears to have been much greater. J.R. Hensley testified that in February 1984 the Fowler residence burned, destroying some of the furnishings as well as the dwelling. On the inventory the house and lot were valued at $70,000, the furniture at $1,000. Under the will, Mr. Hensley received the furnishings, Mrs. Jones and Mr. Earthman the house and lot. Hensley admitted to having received $160,000 in insurance proceeds for his interest. Helen Jones testified that she received $46,000 from insurance for her half interest in the burned residence and that she sold her half interest in the property for $125,000.

of a will. Section 48 begins, *"When a person dies intestate...."* From this language it is obvious that these provisions are conditioned upon a prior determination of intestacy. It is equally obvious the issue of intestacy is not one appellants would readily concede. Hence, the matter before the court could not have been a determination of heirship, requiring the application of sections 48 *et seq.*

 The probate code provides that *any* person interested in the estate may bring a will contest. Tex.Prob.Code Ann. § 10 (Vernon 1980). Deferring for the present any discussion of indispensable parties and Rule 39 of the Texas Rules of Civil Procedure, we note that the probate code does not require that *all* interested persons be joined in the suit. The statute's plain language is that any of the defined class may initiate the will contest. "Persons interested" has been defined as "heirs, devisees, spouses, creditors, or any others having a property right in, or claim against, the estate being administered." Tex.Prob.Code Ann. § 3(r) (Vernon 1980). Appellees state in their original petition that they are the children and grandchildren of the Pinkney Fowler's deceased brothers, Edward, Robert, Glenny, and John. Under Texas laws of descent and distribution, the nieces and nephews of Pinkney Fowler would be his heirs if he died unmarried, without a valid will, without children or other descendants, and if his parents predeceased him. Tex.Prob. Code Ann. § 38(a) (Vernon 1980).

 Contrary to the contentions of Mrs. Jones, the trial court did have a method of determining that appellees were persons interested in the estate and it properly utilized that method. Before one may prosecute a proceeding to contest the probate of a will, he must prove that he is a person interested in the estate. *Womble v. Atkins,* 160 Tex. 363, 331 S.W.2d 294, 297–98 (1960). As previously stated by this court, the proper procedure to follow on the question of a contestant's interest is to try that issue separately in an in limine proceeding in advance of a trial of the issue of the will's validity. *Edwards v. Haynes,*

690 S.W.2d 50, 51 (Tex.Civ.App.—Houston [14th Dist.] 1985), *rev'd on other grounds,* 698 S.W.2d 97 (Tex.1985). The record reflects that at the request of Mrs. Jones's counsel the trial court conducted an in limine hearing to try the issue of appellees' interest. Appellees presented evidence of their relationship to the deceased as descendants of his brothers. They testified that Mr. Fowler died unmarried and without issue and that his parents and siblings predeceased him. Appellants were given the opportunity to cross-examine appellees and to present evidence disputing their testimony. Appellants did neither. The in limine hearing satisfied the requirements of the probate code that appellees were persons interested in the estate.

The question remains whether the trial court was deprived of jurisdiction by the absence of necessary and indispensable parties, known or unknown. Appellants contend that all parties whose interest in property will be affected by the action are necessary and indispensable parties in a will contest and that failure to join all such parties deprives the court of jurisdiction pursuant to Rule 39 of the Texas Rules of Civil Procedure. While Mrs. Jones's points one, two, and three attack the trial court's ability to identify Mr. Fowler's heirs at law, appellants Hensley and Earthman complain in their points two and three that the Attorney General of Texas and the purchaser of the property devised to Mrs. Jones were not joined. With respect to the non-joinder of the Attorney General of Texas, appellants Hensley and Earthman contend that Article 4412a provides that the Attorney General of Texas shall be a necessary party to a contest of a will the terms of which devise or bequeath property for charitable purposes. The $1000 gift to Sacred Heart Co–Cathedral was such a bequest.

Appellants do not refute the assertions of appellees that Sacred Heart Co–Cathedral was represented by counsel and that appellees agreed not to disturb the charitable bequest. With respect to the non-joinder of Mrs. Jones's purchaser, they do not refute that the grantee of Mrs. Jones's interest bought only a contingent interest

in the property devised to her, an interest conditioned specifically on there being no will contest. Nor do they dispute that appellees and the purchaser settled their dispute. We do not, however, find it necessary to address the substantive reasons for affirming the trial court's actions. Our conclusion that the trial court was not deprived of jurisdiction by the absence of any party is based upon procedural grounds.

In order to preserve error for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds therefor. TEX.R.APP.P. 52. A complaint that there is a defect of parties is properly brought to the trial court's attention by means of a verified plea in abatement. *Van Voorhies v. Hudson,* 683 S.W.2d 809, 810 (Tex.App.—Houston 1984, no writ); TEX.R.CIV.P. 93(4). No such plea was filed by any of the three appellants. Appellants argue that a defect in parties is fundamental error, depriving the trial court of power or authority to proceed to judgment, citing *Pampell v. Pampell,* 554 S.W.2d 20, 21 (Tex.Civ.App.—Austin 1977, no writ). We believe that the statement made by the Austin court is no longer the law in Texas. In an opinion specifically interpreting Rule 39, the Supreme Court of Texas has declared that the historical and classical approach to the joinder of parties has been replaced by the 1971 amendment of Rule 39. *Cooper v. Texas Gulf Indus.,* 513 S.W. 2d 200, 203 (Tex.1974). No longer is a judgment rendered invalid solely because it was entered in the absence of an indispensable party. *Id.* at 203. The emphasis of current law is upon pragmatism and practicality. *Id.* at 204. Where the case has been tried as to those parties who were present and there was no appropriate objection made at the trial level the court is not automatically deprived of jurisdiction. *Id.* at 204.

In a more recent opinion, the supreme court reaffirmed the views expressed in *Cooper. Pirtle v. Gregory,* 629 S.W.2d 919, 920 (Tex.1982). In that case, the supreme court reversed the judgment of the court of appeals which had held that the absence of an indispensable party was fundamental error. *Id.* at 919. The supreme court held that the instance of fundamental error is rare and does not exist where one has waived, consented to, or neglected to complain about an error at trial. *Id.* at 920. After failing to protest at trial, one may not surprise the opponent on appeal by stating a complaint for the first time. *Id.* at 920. Another appellate court, in a case factually parallel to that before us, has followed *Cooper,* holding that the unchallenged absence of indispensable parties did not deprive the court of jurisdiction to proceed with the parties before it. *Jackson v. Thompson,* 610 S.W.2d 519, 522 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ). We hold that it was not fundamental error for the trial court to proceed to judgment as the absence of any party did not deprive the trial court of jurisdiction. Points one, two, and three of appellant Jones and points two and three of appellants Hensley and Earthman are overruled.

Having resolved the question of jurisdiction, we turn to the other points of error raised by the appellants. Mrs. Jones contends that the trial court should have awarded the interest of Carita Fowler Mathews and Helen Teri Fowler to her. These women, two of the original plaintiffs, disclaimed their interest, if any, in the estate. Mrs. Jones's argument is as follows: (1) under the will of Pinkney Fowler she was awarded an interest in land; (2) the appellees have contested that interest; (3) a dispute over title to land is a trespass to try title suit; (4) there is no difference between this case and a trespass to try title action; (5) in a trespass to try title suit a disclaimer is a denial of ownership of the subject property made by the disclaiming party to the other party; (6) by disclaiming, Mrs. Mathews and Ms. Fowler are admitting they do not own the land; and, therefore, (7) the trial court should have awarded their interest to Mrs. Jones.

The fallacies of this logic are too numerous to detail. The action before the trial court was not a statutory trespass to try title suit, authorized by the property

code. TEX.PROP.CODE ANN. § 22.001 (Vernon 1984). Original jurisdiction of trespass to try title suits is vested in the district courts, not in the probate courts. TEX. CONST. art. V § 8 (1891, amended 1978); TEX.GOV'T.CODE ANN. § 24.007 (Vernon 1988). The county courts, including the probate courts, have exclusive original jurisdiction to determine the validity of a will. TEX. CONST. art. V § 16 (1891, amended 1985); TEX.GOV'T.CODE ANN. § 26.041 (Vernon 1988); TEX.PROB.CODE.ANN. § 4 (Vernon 1980). (To distinguish the roles of the two courts with respect a deceased's realty see *Zamora v. Gonzalez*, 128 S.W.2d 166, 168 (Tex.Civ.App.—San Antonio, 1939 (writ ref'd).) The action in the probate court was a will contest properly brought under section 10 of the probate code. TEX.PROB. CODE.ANN. § 10 (Vernon 1980). The effect of a disclaimer in a will contest is controlled by the probate code, not the property code. Such disclaimer is effective as of the date of the decedent's death and, unless a valid will determines otherwise, the subject property shall pass as if the person disclaiming had predeceased the decedent. TEX.PROB.CODE.ANN. § 37A (Vernon Supp. 1980). The trial court's judgment determined that the probated will was not valid, hence the deceased died intestate. An invalid will is not made valid by the disclaimer of a potential heir at law. Where there is no valid will, the Texas laws of descent and distribution, set forth in the Texas Probate Code, apply. TEX.PROB.CODE.ANN. § 38 (Vernon 1980). We overrule appellant Jones's fourth point of error.

 In their first point of error, appellants Hensley and Earthman attack the legal and factual sufficiency of the evidence to support the jury finding that Pinkney Fowler lacked testamentary capacity on the date the will was executed, April 19, 1983. The standards for appellate review of attacks on the legal and factual sufficiency of the evidence are well established. In addressing appellants' "no evidence" points we consider only the evidence to support the finding, disregarding all evidence and inferences to the contrary. *King v. Bauer*, 688 S.W.2d 845, 846 (Tex. 1985); *Garza v. Alviar*, 395 S.W.2d 821,

823 (Tex.1965). If there is any evidence of probative force to support the finding of the trial court, the point must be overruled. In reviewing a contention that there is insufficient evidence to support the jury's finding, the appellate court will review the entire record and uphold the finding unless the evidence is so weak as to be manifestly erroneous or unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

 In a suit to annul a will already probated, the burden is upon the will contestants to establish the incapacity of the testator by a preponderance of the evidence. *Lee v. Lee*, 424 S.W.2d 609, 610 (Tex.1968). The proper inquiry in such a case is the testator's mental capacity on the day the will was executed. *Lee*, 424 S.W. 2d at 611. When there is no direct testimony of a lack of capacity on the very day of execution, testator's mental condition on that precise date may be determined from lay opinion testimony based upon the witnesses' observations of the testator's conduct either prior or subsequent to the execution. *Id.* at 611. Evidence of incompetency at other times can be used to establish incompetency on the day the will was executed if it is demonstrated that the condition had some probability of being the condition of the testator at the time the will was executed. *Croucher v. Croucher*, 660 S.W.2d 55, 57 (Tex.1983).

 Testamentary capacity has been defined by our courts to mean sufficient mental ability, at the time of the execution of the will, (1) to understand the business in which the testator is engaged, the effect of making the will, the general nature and extent of his property, (2) to know the testator's next of kin and the natural objects of his bounty, and (3) to have sufficient memory to assimilate the elements of the business to be transacted, to hold those elements long enough to perceive their obvious relation to each other, and to form a reasonable judgment as to them. *Prather v. McClelland*, 76 Tex. 574, 13 S.W. 543 (1890); *Lowery v. Saunders*, 666 S.W.2d 226, 232 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.).

■ There is a plethora of evidence to support the jury finding that Pinkney H. Fowler did not have testamentary capacity on the day the will was executed. The record shows that there were instances before the will was signed when Mr. Fowler could not understand the extent of his property and when he failed to recognize members of his family.

Pinkney Fowler was the last survivor of seven brothers and sisters. He and his unmarried sister, Mary, lived together at the edge of downtown Houston at 1818 Bagby Street. The house had been a home to many generations of the Fowler family. His nieces and nephews regarded him as a favorite uncle. In their childhood their parents held him up to them as a model of impeccable manners and fastidious dress. Although he had no children of his own, he was a good listener, was sensitive to their needs as children and, as they grew up, remained interested in their careers and accomplishments. His affection was demonstrated in letters and in generous gifts to his relatives. He often attended the frequent family picnics and other gatherings of the large Fowler family.

A change in his behavior was first noticed as early as 1978 when he was atypically disinterested in an architectural historian's visit to the family home. In the years that followed he became a recluse, avoiding family reunions and remaining in his room for gatherings he formerly would have enjoyed. The radical changes were noticed by many family members in November 1982 when they gathered for his sister Mary's funeral. He was no longer the "Esquire fashionplate" in white suit and spats that his nephews remembered; he more resembled a "war prisoner from Auschwitz." His nephew Robert Fowler did not consider him mentally capable of handling the responsibility of acting as executor of Mary Fowler's estate; eventually it became necessary for Robert Fowler to petition the court for his removal from that office.

In their case in chief, appellees recounted specific incidents of irrational conduct by their uncle prior to the execution of his will. One in particular demonstrated his inability to distinguish the extent of his own property as opposed to that of his sister. During her last illness, Mary Fowler asked Robert Fowler to assist her in her financial matters. When Robert Fowler attempted to do so, Pinkney Fowler accused the nephew of "trying to steal *my* money." A niece, Amy Theresa Fowler, testified that some time in 1983 she contacted her uncle for advice concerning some real property which they owned jointly, land which had been in the family for years. He insisted he had no idea what property she was talking about and ended the conversation abruptly. Several appellees told the jury of instances in early 1983 when their uncle did not recognize them. They also testified that his personality and physical appearance were "totally abnormal" for him. He was uncharacteristically rude and curt.

In August of 1983 Pinkney Fowler injured his leg and refused to seek medical attention. Shortly thereafter, one of his nephews, visiting Houston from out of state, called on his uncle and found him in bed, wrapped only in a filthy sheet. The once-immaculate Mr. Fowler was slovenly and smelly with a puss-filled gangrenous wound on his leg. Two nephews forcibly carried him to St. Joseph's hospital for treatment. The leg could not be saved and was amputated.

The evidence showed that five doctors had concluded that Mr. Fowler had organic brain syndrome, or dementia. In addition to the testimony of plaintiffs' expert Dr. J. Martin Barrash (a neurosurgeon), the doctors included Dr. Thomas Earthman, brother of appellant James Earthman (the physician who admitted Mr. Fowler to St. Joseph's hospital), Dr. Gerald Ratinov (a neurologist who interpreted a brain scan performed on Mr. Fowler), Dr. Vlasta Adam (Mr. Fowler's treating physician at the time of his death), and Dr. R.M. Borrell (a consulting physician). The report of Dr. R.M. Borrell, the consulting physician, stated that the brain scan "showed definite changes compatible with cortical and subcortical atrophy." Dr. Adam agreed that the atrophied brain and diminished density

indicated by the brain scan report can support a diagnosis of dementia; such abnormalities indicate changes in the brain and would help explain changes in behavior and personality. She said that although he was alert, he was disoriented as to time, place, and person, and he was generally unco-operative and uncommunicative. Upon examining an electroencephalographic report of Mr. Fowler, Dr. Adam stated that the EEG showed the brain to be diffusely abnormal. She further testified that in her opinion, based upon a reasonable medical probability, Mr. Fowler suffered from dementia that was chronic, rather than acute.

The jury heard evidence that dementia is a progressively degenerative disease lasting one to five years. It can cause impairment of memory, judgment, and abstract reasoning in addition to changes in personality. The organic causes can include arteriosclerotic disease, cerebrovascular disease, brain atrophy, cerebral infarcts, and cerebral ischemia. The experts testified that all of these conditions had been present in Mr. Fowler for months, possibly years, before he died. Appellees' expert Dr. Barrash testified that, within a reasonable medical probability, Mr. Fowler's obvious chronic dementia began several years prior to his death, had progressed to such a state that he was demented prior to April 1983, and that by that date he would not have known the natural objects of his bounty, the nature and extent of his property, or the nature of the act of execution of a purported will.

Attempting to discredit the testimony of the doctors, appellants point out that none examined Mr. Fowler before August 1983, four months after the execution of the will. The supreme court has held, however, that examination of a testatrix five months after she executed her will was not so remote in time as to preclude opinion, based upon reasonable medical probability, of the condition of the testatrix on the date of execution. *Lindley v. Lindley*, 384 S.W.2d 676, 682 (Tex.1964).

Appellants produced testimony to support their position that Pinkney Fowler did indeed have testamentary capacity on April 19, 1983. Earlier in April Mr. James Earthman brought Mr. Steven Cavanaugh to Mr. Fowler's home to discuss preparation of a will. Although Mr. Cavanaugh could not recall whether Mr. Fowler or Mr. Earthman gave him the notes from which the will was prepared, he stated that in his opinion Mr. Fowler knew to whom he wanted to leave his property and the effect of signing his name to the document. Mr. Cavanaugh's employee who came with him to the house for the execution testified that there was no question in her mind as to whether Mr. Fowler knew why they were there and what he was doing. Neither Mr. Cavanaugh nor the employee noted anything remarkable in Mr. Fowler's dress or personal hygiene. J.R. Hensley testified that in the spring of 1983 he regularly accompanied Mr. Fowler, driving him on errands, to church, and out for entertainment. He said he played gin rummy well, prepared his own meals, and read the newspaper daily. The only change in Mr. Fowler between 1978 and his death in November 1983 that Mr. Hensley found notable was that Mr. Fowler seemed happier. Ms. Darlene McKlveen, manager and bartender of a gay bar that Mr. Hensley and Mr. Fowler visited once or twice a week, testified that Mr. Fowler was courteous, well-dressed, and had a good memory. Appellant Helen Jones testified that she had worked for the family for thirty years and had never observed any change in Pinkney Fowler's personality; it was her opinion that he was of sound mind.

The evidence recited above is both legally and factually sufficient to support the finding that Pinkney Fowler lacked testamentary capacity on the date the will was executed. The first point of error of appellants Hensley and Earthman is overruled. The judgment of the trial court is affirmed.