Virginia Spell ALLDRIDGE, Appellant

v.

Marjorie W. SPELL, Appellee.

No. 9658.

Court of Appeals of Texas,
Texarkana.

June 27, 1989.

Harry N. Monck, Scott Ramsey & Associates, Houston, for appellant.

Wiley Thomas, Angleton, for appellee.

GRANT, Justice.

Virginia Spell Alldridge appeals from a judgment of the probate court denying her application for the probate of the will of her father, John T. Spell.

Alldridge applied to probate the will, executed by her father, John T. Spell, on December 10, 1986. John T. Spell's widow, Marjorie, contested the will on the grounds of undue influence and lack of testamentary capacity. A jury determined that John T. Spell lacked testamentary capacity to execute the December 10th will, and it also found that Virginia Alldridge had incurred reasonable and necessary attorney's fees in her efforts to probate the will in the amount of $10,500. The trial court entered judgment denying probate of the will but refused to award attorney's fees to Alldridge.

Alldridge contends that the finding that John T. Spell lacked testamentary capacity was against the great weight and preponderance of the evidence and further that there was no evidence showing that John T. Spell did not have testamentary capacity at the time he executed the will. She further contends that the trial court erred by refusing to enter judgment for her for reasonable attorney's fees.

Spell died on March 6, 1987, at the age of seventy-three. He had received a quadruple bypass in 1983, and he also suffered from diabetes, which was not medically regulated during 1986. On December 9, 1986, Spell had been diagnosed as having cancer, and thereafter he moved to Pearland to live with his daughter, Virginia Alldridge. Prior to that time, he had lived with his wife, Marjorie, at Columbia Lakes. On December 10, 1986, Spell executed the will which is the subject matter of this litigation. He and Marjorie separated five days later on December 15, 1986, and she filed for a divorce on January 7, 1987. According to Marjorie, she filed for the divorce in order to obtain a temporary restraining order to prevent Virginia Alldridge and William Spell, children of John T. Spell, and Sherry Spell, John T. Spell's daughter-in-law, from removing business records from her home.

In March 1985, John and Marjorie Spell had executed reciprocal wills whereby they left each other their entire estate. In the

event that Marjorie Spell predeceased John, his will provided that one half of his estate would go to his son and the other one half to his daughter. By codicil of July 3, 1985, Spell struck the provisions relating to Virginia Alldridge and William Spell.

On December 9, 1986, John T. Spell contacted his lawyer, Stanley McGee, about changing his will. The following day (December 10), Marjorie Alldridge drove him to Stanley McGee's office but did not accompany him inside. McGee drafted the December 10th will, was named by Spell as executor and witnessed it. In this will, Spell devised his interest in a marine supply company to his son William and the remainder of his estate to his daughter, Virginia Alldridge. Subsequently, upon Spell's death, McGee filed the application for the probate of the will.

McGee testified that he had received a telephone call on December 9th from Sherry Spell, and that Sherry told him that he should not prepare a will for John T. Spell because of Spell's mental condition. McGee further testified that Spell was weak on the occasion in question, but that Spell was able to walk without assistance, that he was aware of what he was doing and that he had instructed McGee to make the changes in the will. McGee further testified that John T. Spell had the capacity to know the objects of his bounty and knew the nature and extent of his property.

Jane McGee, Stanley McGee's wife and legal secretary, also witnessed the will. She testified that Spell understood what he was doing. Darlene Patton, McGee's legal secretary, notarized the will, and although no oath was administered, she testified that Spell had requested the changes in the will and understood that he was executing the will.

■ The proponent of a will has the burden of establishing the testamentary capacity of the testator. *Croucher v. Croucher*, 660 S.W.2d 55 (Tex.1983); *Seigler v. Seigler*, 391 S.W.2d 403 (Tex.1965). Since Alldridge had the burden of proof with respect to this issue she may not properly urge a no evidence point because the jury's failure to find a fact need not be supported by evidence. *See Stuckey v. Conveying Techniques, Inc.*, 753 S.W.2d 449 (Tex.App.–Texarkana 1988, writ. denied); *see also* Cornelius, *Appellate Review of Sufficiency Of the Evidence Challenges In Civil and Criminal Cases*, 46 Tex.B.J. 439, 440 (1983). Alldridge styles and argues this issue as a no evidence point. An appellate court is not authorized to reverse a trial court's judgment in the absence of properly assigned error. *Central Education Agency v. Burke*, 711 S.W.2d 7, 8 (Tex.1986); *Mabe v. City of Galveston*, 687 S.W.2d 769, 771 (Tex.App.–Houston [1st Dist.] 1985, writ. dism'd).

In her second point of error, Alldridge contends that the finding that John Spell lacked testamentary capacity was against the great weight and preponderance of the evidence. Alldridge, as the proponent of the will had the burden of establishing the testamentary capacity of the testator, John T. Spell. *See Croucher v. Croucher*, 660 S.W.2d 55; *Seigler v. Seigler*, 391 S.W.2d 403. For this type of sufficiency of the evidence challenge, courts will consider and weigh all of the evidence, and the jury's finding will be upheld unless the evidence is so weak that the finding is manifestly erroneous or unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *Jones v. LaFargue*, 758 S.W.2d 320, 325 (Tex.App.–Houston [14th Dist.] 1988, writ. denied).

■ Although the appropriate inquiry is the state of the testator's mind on the date the will was executed, evidence concerning mental capacity is not limited to the time the act was done. *Johnson v. Estate of Sullivan*, 619 S.W.2d 232, 234 (Tex.Civ. App.–Texarkana 1981, no writ.); *Chambers v. Chambers*, 542 S.W.2d 901, 907 (Tex.Civ. App.–Dallas 1976, no writ.).

Stanley McGee, Jane McGee, and Darlene Patton each testified to establish Spell's mental capacity on December 10, 1986, at the time he executed the will. (See discussion of facts, *supra*.) Additionally, the proponents of the will introduced a memorandum from Spell's medical records made by Dr. J.C. Burns, Spell's personal physician. The memorandum indicates

that it was made on December 11, 1986, the day after the will was executed, and set forth that Spell was "oriented to time, person and place. He is competent to make decisions without assistance from anyone. His recent and past memory is excellent. In my best judgment he is sane."

Dr. Benjamin Weiner, a physician friend of Spell's, testified that he and Spell were "golfing buddies" and that in the last four to five years, he had spent approximately twenty hours a week in the company of John Spell. Dr. Weiner testified that on December 12, 1986, Spell was mentally "in and out." He testified that in his opinion, as a doctor and as a friend, Spell could not have made a will on December 10th and would not have known the nature and extent of his estate, would not have known the objects of his bounty, and would not have had the mental capacity to appreciate that he was making a will. Dr. Weiner testified that Spell was taking the following medications: valium, two pain medications, a sleeping medication, medication for relaxing his stomach muscle, heart medication, an antidepressant, medication for diarrhea, and an antibiotic. He further testified that when diabetes is not regulated, as in Spell's case during 1986, it can affect a patient's mind.

William Spell testified that he had always had a good relationship with his father. In his opinion, his father did not have the mental ability to know the objects of his bounty, to know the extent of his property, or to realize that he was making a will. He testified that his father's mind "was completely gone" in early December 1986. According to him, Spell could not concentrate, could not think, and would forget things he said. He testified that his father was like this early in December 1986, even before he had been diagnosed on December 9th as having cancer. William Spell further testified that from the time his father learned of his cancer, all he

would discuss were his burial arrangements.[1]

Bob Morton was a friend of Spell, who also had a business relationship with him after meeting him in 1976. Morton testified that during the period of time around December 10, 1986, Spell's mind would wander and he would appear to become irrational when he discussed with him what he wanted done.

■ There is no direct evidence that John T. Spell lacked testamentary capacity on the day he executed the will. Evidence of incompetency at other times can be used to establish incompetency on the day the will was executed if it demonstrates that the condition persists and has some probability of being the same condition which existed at the time of the will's making. *Croucher v. Croucher*, 660 S.W.2d 55, *citing Lee v. Lee*, 424 S.W.2d 609 (Tex.1968); *Chambers v. Chambers*, 542 S.W.2d 901.

■ A testator has testamentary capacity if, at the time he executes the will, he has sufficient mental ability: (1) to understand the business in which he is engaged, the effect of making the will, and the general nature and extent of his property; (2) to know his next of kin and the natural objects of his bounty; and (3) to assimilate all of the foregoing elements long enough in his memory to perceive their relation to each other, and to form a reasonable judgment as to them. *Jones v. LaFargue*, 758 S.W.2d at 325; *Lowery v. Saunders*, 666 S.W.2d 226, 232 (Tex.App.–San Antonio 1984, writ. ref'd n.r.e.).

■ Although there is evidence supporting both sides of the issue, we do not find that the jury determination that Spell lacked testamentary capacity when he executed the will on December 10, 1986, was against the great weight and preponderance of the evidence.

■ In her third point of error, Alldridge contends that the trial court erred in deny-

1. These plans were to have "Frog Slide" and "When the Saints Go Marching In" played at his funeral, to be buried in Georgia, and to be buried with his "best friend," a dog named Missy. Save the musical requests, the testimony does establish that these wishes were complied with: Alldridge drove the dog to Georgia where it was killed and then buried in the casket with her father.

ing her an award for reasonable attorney's fees in the amount of $10,500 because she is entitled to attorney's fees as a matter of law. Tex.Prob.Code Ann. § 243 (Vernon Supp.1989) provides in part that:

When any person designated as executor in a will or an alleged will, ... defends it or prosecutes any proceeding *in good faith, and with just cause,* for the purpose of having the will or alleged will admitted to probate, whether successful or not, he shall be allowed out of the estate his necessary expenses and disbursements, including reasonable attorney's fees, in such proceedings. (Emphasis added).

Special issue number three, as submitted to and answered by the jury, read as follows:

### SPECIAL ISSUE NO. 3

What sum of money, if any, paid now in cash, do you find from a preponderance of the evidence would be the amount of reasonable and necessary attorney's fees for the services rendered on behalf of Virginia Spell Alldridge in connection with this lawsuit for Application of Probate of the Will of John T. Spell? Answer in dollars and cents, if any:

For legal services rendered in the preparation and trial of this cause to the Court.

ANSWER: $10,500

Alldridge simply argues that, as executor of the estate, she is entitled to attorney's fees, per se. Her sole authority is *Huff v. Huff,* 132 Tex. 540, 124 S.W.2d 327 (1939). Alldridge relies on *Huff* for the proposition that denial of the probate of the will does not preclude an award of attorney's fees to the executor. The Court in *Huff* concluded that:

We think that the executor could have had submitted to the jury, along with the other issues, the question of good faith on his part in offering the will for probate; and if the jury had found that, under all the circumstances, he had acted in good faith, then he would have been entitled to judgment for such attorneys' fees and court costs. This was not done;

and the judgment became final. We do not think the rule should be extended further than this....

*Huff v. Huff,* 124 S.W.2d at 330. Thus, the court in *Huff* required a jury finding of good faith before attorney's fees could be recovered. *See also, Russell v. Moeling,* 526 S.W.2d 533 (Tex.1975).

In the present case, Alldridge did not seek and obtain a jury finding of her good faith in offering the will for probate. We, therefore, find that the trial court did not err in refusing to award her attorney's fees in the proceeding.

The judgment of the trial court is affirmed.