Affirmed and Memorandum Opinion filed April 19, 2007








Affirmed and Memorandum Opinion filed April 19, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00998-CV

____________

 

MARVIN V. FLETCHER, Appellant

 

V.

 

WILLIE T. HARRIS, Appellee

 



 

On Appeal from the Probate
Court No. 4

Harris County, Texas

Trial Court Cause No. 339,982-401

 



 

M E M O R A N D U M   O P I N I O N








Appellant, Marvin Fletcher, received letters testamentary
after presenting a will (the AFletcher will@) to the probate
court when his uncle died in 2003.  Appellee, Willie Harris, contested the will
Marvin Fletcher presented and presented a second will (the AHarris will@) that had been
executed two days later than the Fletcher will.  The trial court held a bench
trial and determined that the Harris will was the most current will and that it
had revoked all previous wills, was not a forgery, and was not produced by
fraud, duress, or undue influence.  The trial court issued Harris letters
testamentary and recognized Harris as executrix of the estate.  Marvin appeals
raising seven issues, four challenging the legal and factual sufficiency of the
trial court=s findings of fact and conclusions of law and three
challenging the trial court=s refusal to award Marvin attorney=s fees.  We
affirm.

I.  Background

The decedent, Marvia Fletcher (AMarvia@), died May 31,
2003, at the age of eighty four.  He had no children.  Upon his death, his
nephew and namesake, Marvin Fletcher (AMarvin@), tendered a will
executed October 25, 2002.  The trial court issued Marvin letters testamentary,
and he began winding up the estate.  Willie Harris, Marvia=s goddaughter,
then filed a will executed October 27, 2002 along with a motion for new trial,
application to probate the second will, and contest to the first will.

Marvia was married to Gertie Fletcher, who predeceased
him.  According to Marvin, after Gertie=s death, Marvia
suggested he should make a will, and so Marvin had his attorney draw up a
will.  Marvin drove Marvia to this attorney=s office on
October 25, 2002, and Marvia executed the will devising his entire estate to
Marvin.  However, two witnesses and a notary affirmed they witnessed Marvia
execute a will devising his entire estate to Harris just two days later.  Upon
Marvia=s death, these
wills became the subject of this suit.

Testimony at trial was short.  Harris presented the notary,
two witnesses, and a handwriting expert to attest to the Harris will=s authenticity. 
The notary and witnesses also testified that, from what they observed, there
was no fraud, duress, or undue influence exerted upon Marvia.  Marvin testified
that the will was forged based upon his personal knowledge of his uncle=s handwriting and
further testified that there must have been some fraud, duress, or undue
influence exerted.  Marvin also presented expert handwriting testimony that
Marvia did not sign the Harris will.








At the end of trial, both parties asked the trial court to
award them attorney=s fees out of the estate.  Harris argued
that Marvin could not receive his fees because he had not filed a pleading
asking for them and had not proved good faith.  The probate court found that
the Harris will was valid, not a forgery, and not a product of fraud, duress,
or undue influence.  The probate court further refused any award of attorney=s fees to Marvin. 


Marvin timely filed appeal and now raises the following
issues: (1) the evidence was factually insufficient to support the trial court=s finding that the
Harris will was not a forgery, (2) the evidence was factually insufficient to
support the trial court=s finding of no undue influence,[1]
(3) the evidence was legally insufficient to support the conclusion of law that
the Harris will was not a forgery, (4) the evidence was legally insufficient to
support the conclusion of law that the Harris will was not a product of undue
influence, (5) the evidence was factually insufficient to support the finding
that Marvin failed to plead and prove good faith for attorney=s fees, (6) the
trial court erred in concluding Marvin had no proof or pleading of good faith, and
(7) the probate court erred in refusing to award Marvin attorney=s fees for his
contest of the Harris will.  

II. Analysis

A.      Evidence
Supporting Findings of Fact and Conclusions of Law Regarding the Execution and Validity
of the Harris Will

We will consolidate Marvin=s issues for the
sake of clarity.  We will first address his issues related to the forgery
finding.  We will then address Marvin=s issues related
to undue influence.








A
probate court=s findings are reviewable for legal and factual sufficiency by the same
standards applied in reviewing evidence supporting a jury=s answer.  Catalina v. Blasdel,
881 S.W.2d 295, 297 (Tex. 1994).  When determining whether legally
sufficient evidence supports the finding under review, we must consider
evidence favorable to the finding if a reasonable fact finder could consider it
and disregard evidence contrary to the finding unless a reasonable fact finder
could not disregard it.  City of Keller v. Wilson, 168 S.W.3d 802, 827
(Tex. 2005).  In addition, Awhen the circumstantial evidence of a
vital fact is meager, a reviewing court must consider not just favorable but
all the circumstantial evidence, and competing inferences as well.@  Id. at
814.  A legal sufficiency point may be sustained only when the record
discloses: (1) a complete absence of evidence of a vital fact, (2) the court is
barred by rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact, (3) the evidence offered to prove a vital fact
is no more than a mere scintilla, or (4) the evidence established conclusively
the opposite of the vital fact.  Juliette Fowler Homes, Inc. v. Welch Assoc.,
793 S.W.2d 660, 666 n.9 (Tex. 1990).  The final test for legal sufficiency is
whether the evidence at trial would enable reasonable and fair-minded people to
reach the verdict under review.  City of Keller, 168 S.W.3d at 827.  

In reviewing a factual sufficiency point, we consider all
the evidence supporting and contradicting the finding.  Plas‑Tex, Inc.
v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989).  We set aside the
verdict only if the finding is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust or if the result shocks the
conscience or clearly indicates bias.  See Pool v. Ford Motor Corp.,
715 S.W.2d 629, 735 (Tex. 1986); Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986).

1.       Forgery

Marvin challenges the legal and factual sufficiency of the
probate court=s determination that the Harris will was not a
forgery.  The evidence that the Harris will is not a forgery was two-fold. 
First, witnesses to the signing testified that they actually saw Marvia sign
the will.  Second, a handwriting expert testified that the signature on the
Harris will was consistent with exemplars of Marvia=s signature. 
Therefore, the evidence was legally sufficient to support the finding of no
forgery.








Marvin presented personal testimony and expert testimony on
the issue of forgery.  He testified that the signature was not his uncle=s, and his expert
testified that the signature was not consistent with exemplars of Marvia=s signature. 
However, this is nothing more than competing testimony.  Marvin=s expert did not
personally inspect the relevant documentsConly copies. 
Also, Marvin=s expert compared the signature on the Harris will
with only four of Marvia=s known signatures.  It was the probate
court=s duty to discern
what testimony was credible and should be accepted.  The probate court did so,
and we will not substitute our judgment for its.[2] 
We overrule Marvin=s issues related to forgery.

2.       Undue
Influence

As with his forgery issues, Marvin challenges the legal and
factual sufficiency of the evidence to support the probate court=s findings of fact
and conclusions on law.[3] 
The evidence is both legally and factually sufficient.








To prove undue influence, a will contestant must show: (1)
the existence and exertion of an influence, (2) the effective operation of such
influence so as to subvert or overpower the mind of the testator at the time of
the execution of the testament, and (3) the execution of a testament that the
maker thereof would not have executed but for such influence.  Hoffman v.
Tex. Commerce Bank Nat=l Assoc.,
846 S.W.2d 336, 340 (Tex. App.CHouston [14th Dist.] 1992, writ denied). 
Undue influence involves an extended course of dealings and circumstances and
may be proven by direct or circumstantial evidence.  See Watson v. Dingler,
831 S.W.2d 834, 837 (Tex. App.CHouston [14th Dist.] 1992, writ denied). 
It is therefore proper to consider evidence of all relevant matters that
occurred within a reasonable time before or after execution of the will as
tending to prove the existence of undue influence at the time of execution.  See
id.  All material facts may be considered, including: the circumstances
attending execution of the instrument; the relationship between the maker and
the beneficiaries; the motive, character, and conduct of those benefitted by
the instrument; the words and acts of all attending parties; the physical and
mental condition of the maker at the time of the execution of the instrument;
the maker=s age, weakness, infirmity, and dependency on or
subjection to the control of the beneficiary; and the improvidence of the
transaction by reason of unjust, unreasonable, or unnatural disposition.  Id.

In arguing that the evidence is insufficient to support the
probate court=s findings on undue influence, Marvin focuses
primarily on the surrounding circumstances of the Harris will=s execution. 
Specifically, he notes that the execution ceremony took place at Harris=s home, the
witnesses and notary were Harris=s neighbors, the
notary failed to secure Marvia=s signature in the notary log,[4]
Harris participated in the preparation and execution of the will, and Marvia=s signature
appeared inconsistent between the two wills.[5] 
Marvin also highlights that Harris did not testify at trial, although it is
unclear how this affects the outcome of the appeal.  The probate court
considered these factors and concluded that the Harris will was not produced as
a result of or undue influence, and the evidence is both legally and factually
sufficient to support that conclusion.








Harris=s evidence directly addressed Marvin=s arguments
insofar as she presented the notary and two witnesses.  There was little
testimony regarding what role Harris played in the preparation or execution of
the will; in fact, it is entirely unclear who prepared the will.  At most, it
appears Harris asked the notary and witnesses to be part of the ceremony and
that she was present.  The notary and two witnesses testified Marvia appeared
alert, knew what he was doing, and desired to execute the will.  The notary
explained that he asked to see Marvia=s driver=s license, and
thus did not ask him to sign the notary log.  Although Marvin claims the
absence of Marvia=s signature in the notary log is suspect
because the two witnesses signed the notary log, it was within the probate
court=s province to
weigh the  credibility of that testimony.  

Ultimately, the probate court had the testimony of three
eyewitnesses, who stated that Marvia acted of his own free will, versus Marvin=s theory that the
surrounding circumstances of the execution led to the undeniable conclusion
that Marvia did not sign of his own free will.  Marvin produced no testimony or
evidence other than his personal opinion to prove undue influence.  The probate
court resolved the conflicting evidence, and the evidence supports those
findings and conclusions.  Therefore, we overrule appellant=s issues regarding
undue influence.

B.      Attorney=s Fees

In his final three issues, Marvin argues the probate court
erred by failing to award him attorney=s fees out of the
estate for the will contest.  Harris counters that the probate court acted
properly pursuant to Texas Probate Code section 243 because Marvin neither
pleaded nor proved good faith. We agree. 

Section 243 of the Probate Code provides:

When any person designated as
executor in a will or an alleged will, or as administrator with the will or
alleged will annexed, defends it or prosecutes any proceeding in good faith,
and with just cause, for the purpose of having the will or alleged will
admitted to probate, whether successful or not, he shall be allowed out of the
estate his necessary expenses and disbursements, including reasonable attorney=s fees, in such proceedings. When
any person designated as a devisee, legatee, or beneficiary in a will or an
alleged will, or as administrator with the will or alleged will annexed,
defends it or prosecutes any proceeding in good faith, and with just
cause, for the purpose of having the will or alleged will admitted to probate,
whether successful or not, he may be allowed out of the estate his necessary
expenses and disbursements, including reasonable attorney=s fees, in such proceedings.

 








Tex. Prob. Code Ann. ' 243 (Vernon 2003) (emphasis added). 
There is no dispute among the parties that this section would apply to Marvin
provided he had complied with the good-faith requirement.  At trial, Harris
stipulated that Marvin=s attorney=s fees were reasonable
and necessary and took issue only with the fact that Marvin failed to plead or
prove good faith. 

A suit for
attorney=s fees must be
brought in the original will contest.  See Wich v. Fleming, 652 S.W.2d
353, 355 (Tex. 1983).  Additionally, there must be a finding of good faith
before attorney=s fees may be recovered.  See Alldridge
v. Spell, 774 S.W.2d 707, 711 (Tex. App.CTexarkana 1989, no
writ) (citing Huff v. Huff, 132 Tex. 540, 124 S.W.2d 327, 330 (1939)). 
Neither of those two requirements were met according to our record.  Marvin
never requested attorney=s fees for his good faith efforts; indeed,
the only pleading containing a request from Marvin for attorney=s fees we have in
our record is in his motion to dismiss Harris=s will contest. 
At the end of the bench trial, Harris noted that Marvin had neither pleaded nor
proved good faith.  Marvin did not contest that assertion, did not seek to
amend his pleadings,[6]
and did not seek a finding of good faith.  Thus, the trial court did not err in
failing to award attorney=s fees, and we overrule these issues.

We affirm the
probate court=s judgment.

 

 

 

 

/s/      Leslie B. Yates

Justice

 

 

 

Judgment rendered
and Memorandum Opinion filed April 19, 2007.

Panel consists of
Justices Yates, Anderson, and Hudson.









[1]  Marvin lists fraud, duress, and undue influence in
his statement of the issues.  However, the argument section of his brief
contains citation and argument relevant only to undue influence.  Therefore, we
limit our evaluation of the issue to undue influence.





[2]  Marvin asks us to take judicial notice that Marvia=s purported signature on the Harris will could not be
a genuine signature, or alternatively, could not be procured in the absence of
undue influence.  Under Texas Rule of Evidence 201(b), a judicially-noticed
fact must be generally known in the community or capable of accurate and ready
determination by resort to sources whose accuracy cannot be reasonably
questioned.  The facts Marvin asks us to declare do not meet these
requirements.





[3]  Within this argument, Marvin also alludes to an
argument that Harris did not have standing to contest the Fletcher will. 
However, he has not provided citation to any authority to support that
contention and considering that Harris was propounding a will under which she
was the sole beneficiary, that argument has no basis in law or fact.  See Tex. Prob. Code Ann. ' 3(r) (Vernon 2003); Logan v. Thomason, 202
S.W.2d 212, 215 (Tex. 1947).





[4]  According to Marvin, many of these problems tend to
prove that there is nothing to actually show Marvia was the one who signed the
will.  However, those arguments go to forgery, which we have previously
addressed.





[5]  Marvin asks us, once again, to take judicial notice
that the signature on the Harris will could not be genuine.  However, as we
have previously stated, Marvin has not satisfied the requirements of Texas Rule
of Evidence 201(b).





[6]  See Zapalac v. Cain, 39 S.W.3d 414, 418 (Tex.
App.CHouston [1st Dist.] 2001, no pet.) (discussing a party=s ability to amend probate pleadings for the purpose
of requesting attorney=s fees).